**Oscar CANTU, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 13–93–661–CR, 13–93–662–CR.**

Court of Appeals of Texas, Corpus Christi.

Dec. 22, 1994.

Rehearing Overruled April 27, 1995.

Juan Villescas, Pharr, Dorina Ramos, McAllen, for appellant.

Rene Guerra, Dist. Atty., Theodore C. Hake, Asst. Dist. Atty., Edinburg, for appellee.

Before DORSEY, YAÑEZ and DEVANY,[1] JJ.

## OPINION

YAÑEZ, Justice.

Appellant, Oscar Cantu, appeals from convictions for murder and two counts of aggravated assault on a peace officer. After finding the appellant guilty on all charges, the jury assessed punishment at 75 years for murder and 25 years for each count of aggravated assault. Appellant argues on appeal that the trial court erred in not granting his motion for new trial because he was denied assistance of counsel as guaranteed by the Sixth Amendment. We agree.

Appellant's trial took place from June 7, 1993, to June 11, 1993, in Hidalgo County. Unknown to appellant and the trial court, defense counsel had been suspended from the practice of law. On May 27, 1993, the District 12B State Bar Grievance Committee entered a judgment suspending appellant's trial counsel, Dan Longoria, from the practice of law for three years. The first year was to be served on active suspension and the last two probated. The Grievance Committee entered the judgment only after a hearing; a hearing in which Longoria had notice, but failed to appear.

■ On May 28, 1993, notice of suspension was sent to Longoria by certified mail at his home which was his last known address. Longoria's wife signed for receipt of the letter on June 3, 1993. Longoria claims that he did not open his mail because he was preparing for trial, and thus, did not receive actual notice of the suspension until June 15, 1993, when he was personally served. Likewise, the trial court did not receive notice until June 15, 1993. The Grievance Committee judgment, nonetheless, provided an effective date of June 1, 1993, six days before appellant's trial. The Rules of Disciplinary Procedure require the Grievance Committee to mail its decisions by U.S. certified mail, return receipt requested. TEX.R.DISC.P. 2.19. Longoria was notified as required by the rules. Furthermore, the Disciplinary Rules provide a stay of the suspension while on appeal only if the District Committee finds that the respondent lawyer "does not pose a continuing threat to the welfare of Respondent's clients or to the public." TEX. R.DISC.P. 2.21. The District Committee made no such finding. Longoria's suspension from the practice of law, therefore, began on June 1, 1993.[2]

■ The Sixth Amendment right to counsel applies to all state felony prosecutions. *Narvaiz v. State*, 840 S.W.2d 415, 433 (Tex.Crim.App.1992) (citing *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)), *cert. denied*, —— U.S. ——, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The right to counsel automatically becomes effective at the inception of adversary judicial criminal proceedings and must be implemented by the State at every critical stage of those proceedings, even absent a specific request, unless the accused intelligently and

---

1. Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. §§ 74.003 (Vernon 1988).

2. The state argues that there is a serious due process question as to whether Longoria was suspended as of June 1, 1993, because he did not actually know of his suspension until June 15, 1993. The State cites no authority for this proposition nor does it explain its relevance.

   In this case we are concerned with appellant's *constitutional guarantees. It is manifestly unjust* to find that Longoria was not suspended until he received personal service. It is undisputed that Longoria received notice of, but failed to appear at the Grievance Committee hearing. It is also undisputed that Longoria received notice of his suspension at his home on June 3, 1993, but failed to open or read it. Appellant should not now suffer because of Longoria's inattention. In fact, this pattern of failure to respond or react is the very reason Longoria was suspended. These circumstances demonstrate why suspended lawyers should not represent criminal defendants.

voluntarily yields his prerogative to the assistance of an attorney. *Fuller v. State,* 829 S.W.2d 191, 205 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2418, 124 L.Ed.2d 640 (1993). The constitutional guarantee to assistance of counsel requires that an accused have both counsel *and* reasonably effective assistance of counsel. U.S. CONST. AMEND. VI; *Strickland v. Washington,* 466 U.S. 668, 686–692, 104 S.Ct. 2052, 2063–67, 80 L.Ed.2d 674 (1984); *Narvaiz,* 840 S.W.2d at 433; *Ex Parte Williams,* 870 S.W.2d 343, 348 (Tex.App.—Fort Worth 1994, pet. ref'd), *but see Parrish v. State,* 840 S.W.2d 63, 66 (Tex. App.—Amarillo 1992, no pet.) (Sixth Amendment requires reversal only if trial counsel committed actual errors or omissions that prejudiced defense). Representation of counsel under the Sixth Amendment means at the very least, "representation by a licensed practitioner." *U.S. v. Novack,* 903 F.2d 883, 887 (2nd Cir.1990) (citing *Solina v. United States,* 709 F.2d 160, 167 (2nd Cir. 1983)). When defense counsel is "not authorized to practice law in any state, and the lack of such authorization stemmed from failure to seek it or from its denial for a reason going to legal ability, such as failure to pass a bar examination, or want of moral character," the Sixth Amendment right to counsel will not be met. *Id.* at 887. Moreover, when there is an actual or per se denial of representation of counsel, a defendant "is entitled to relief without proving that he was prejudiced by the deprivation." *Strickland,* 466 U.S. at 669, 104 S.Ct. at 2055–56; *United States v. Taylor,* 933 F.2d 307, 312 (5th Cir. 1991) *cert. denied,* 502 U.S. 883, 112 S.Ct. 235, 116 L.Ed.2d 191 (1991); *Novack,* 903 F.2d at 886 (citing *Holloway v. Arkansas,* 435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978)).

In this case, we must determine whether a trial counsel who has been suspended from the practice of law is indeed "counsel" as required by the Sixth Amendment. When dealing with the effect of disbarment or suspension of defense counsel, a substantive-technical dichotomy has been established. *Cf. Novack,* 903 F.2d at 888; Ex Parte Williams, 870 S.W.2d at 348. That is, where a defendant's attorney has been suspended for mere technical violations such as nonpayment of bar dues, these grounds are insufficient to find a per se violation of the right to counsel. *E.g., Beto v. Barfeild,* 391 F.2d 275 (5th Cir.1968) (failure to pay bar dues); *Hill v. State,* 393 S.W.2d 901, 904 (Tex.Crim.App.1965) (failure to pay bar dues); *Parrish,* 840 S.W.2d at 66 (failure to pay bar dues); *Wilson v. People,* 652 P.2d 595 (Colo.1982) (failure to take oath), *cert. denied,* 459 U.S. 1218, 103 S.Ct. 1221, 75 L.Ed.2d 457 (1983). Yet, where an attorney is forbidden to practice law because of a serious and substantive ethical violation, the Sixth Amendment is *per se* violated and the conviction must be vacated. *See* Novack, 903 F.2d at 889–890 (counsel deceived bar and never took bar exam) (citing *Huckelbury v. State,* 337 So.2d 400, 403 (Fla.Dist.Ct.App. 1976) (counsel did not meet moral standards of bar); *People v. Felder,* 47 N.Y.2d 287, 293, 418 N.Y.S.2d 295, 297–98, 391 N.E.2d 1274, 1276 (1979) (counsel never passed bar exam)); *Ex Parte Williams,* 870 S.W.2d at 348 (counsel disbarred for unauthorized claim settlement and withholding proceeds); *People v. Hinkley,* 193 Cal.App.3d 383, 238, 238 Cal.Rptr. 272 (1987) (counsel placed on inactive list because "incompetent to represent clients"). We agree with the substantive-technical distinction. Like the dissent, we too believe that our inquiry should surround an attorney's competency to represent a criminal defendant. While a license to practice law creates a presumption of competency, that presumption may be overcome. Just as a disbarred lawyer is deemed incompetent as a matter of law to represent a criminal defendant so must an attorney who has been suspended due to substantive violations. *See Curry v. Estelle,* 412 F.Supp. 198, 200 (S.D.Tex.1975), aff'd, 531 F.2d 1260 (1976). The dangers in such a case are grave. The Rules of Professional Conduct are intended to protect clients. When the State Bar finds that a lawyer has violated a substantive rule, refuses to find the lawyer does not pose a danger to his clients, and suspends the lawyer, that lawyer is no longer competent to represent clients. The Constitutional right to counsel requires not only that counsel be effective, but also legitimate and competent.

■ The Chair of the District Grievance Committee, Susan Williams, testified at the new trial hearing that Longoria was suspended for "professional misconduct." She explained that the suspension was not based upon a technical violation of the Disciplinary Rules. Longoria was suspended neither for nonpayment of dues nor failure to complete MCLE hours. Rather, he was suspended for a knowing failure to respond to a demand for information from the State Bar Grievance Committee. Williams also testified that the Committee found that Longoria "had followed a pattern of failure to respond or react." [3] Furthermore, the committee chose not to find that Longoria did "not pose a continuing threat to the welfare of Respondent's clients or to the public." These facts convince us that Longoria was suspended for a serious and substantive violation of the Rules of Professional Conduct. Any presumption Longoria enjoyed for Sixth Amendment purposes has been replaced with overriding evidence of his inability to function as a competent lawyer for a criminal defendant.

The State urges that because no one at the trial knew of the suspension, "it defies logic to take the position that Mr. Longoria did anything less for appellant than he did for any other client." That is exactly the point. The Grievance Committee found a pattern of failure to respond or react in Longoria; his violation was serious and substantive. These characteristics go directly to Longoria's skill and ability as counsel. If the State Bar determined he should not continue to represent clients, he should not. Furthermore, if Longoria had known he was suspended before or during the trial, but chose not to inform his client or the court, there would be a serious conflict of interest. In this case, all we are presented with is trial counsel's testimony that he did not open his mail, and therefore, could not have known of his sus-

pension. The court reasoned in *Solina* that an illegally licensed attorney,

> cannot be wholly free from fear of what might happen if a vigorous defense should lead the prosecutor or the trial judge to inquire into his background and discover his lack of credentials. Yet a criminal defendant is entitled to be represented by someone free from such constraints.

*Solina*, 709 F.2d at 164.

Accordingly, appellant's point of error is sustained. The judgments of the trial court are REVERSED, and we REMAND these cases for a new trial.

DORSEY, J., dissents.

DORSEY, Justice, dissenting.

The majority concludes that appellant's Sixth Amendment right to the assistance of counsel at his felony trial was violated because his retained lawyer had been suspended from practicing law at the time of his trial. It reaches this conclusion without examining whether counsel's performance was deficient or whether such deficiency contributed to the conviction. The sole basis is that a suspended lawyer is the equivalent of no lawyer. I disagree and respectfully dissent.

The Sixth Amendment of the Federal Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." This federally protected right applies to prosecutions in federal courts and to state criminal trials as a part of due process that the states are obliged to give citizens under the Fourteenth Amendment. *Gideon v. Wainright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). In state felony trials, if an accused is unable to afford to hire a lawyer, the state is required to secure counsel for him. *Id.; Argersinger v. Hamlin*, 407

---

**3.** It is impermissible to determine the specific nature of Longoria's violation. The Disciplinary Rules require strict confidentiality in the proceedings before the District Grievance Committee. Tex.R.Disc.P. 2.15. This provision presumably protects the respondent attorney; however, it is sufficient in this case that Williams testified that the violation was not technical, but concerned substantive conduct by Longoria.

It seems that the dissent would find defendants in these cases unharmed if their trial counsel could successfully keep their violation confidential. The Sixth Amendment demands deeper inquiry. The Grievance Committee specifically failed to find that Longoria did not pose a continuing threat to the welfare of his clients. This fact alone informs the court that Longoria's knowledge, training or skills were inadequate.

U.S. 25, 36–37, 92 S.Ct. 2006, 2012–13, 32 L.Ed.2d 530 (1972).

The purpose of the Sixth Amendment is to ensure that criminal defendants receive a fair trial. *Id.* at 33, 92 S.Ct. at 2010–11. That a person who happens to be a lawyer is present beside the accused is not enough to satisfy the constitutional requirement. "[T]he right to counsel is the right to effective assistance of counsel." *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970). Well before the application of the Sixth Amendment to the states through the due process clause of the Fourteenth Amendment, the Supreme Court held that the assistance of counsel is so fundamental a requirement that it is "an essential jurisdictional prerequisite to a federal court's authority to deprive an accused of his life or liberty." *Johnson v. Zerbst,* 304 U.S. 458, 467, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461 (1938).

The right to the assistance of counsel is the right to have a lawyer to counsel, advise, and to conduct the defense of the accused. This right is critical because lawyers are the means through which the other rights that constitute due process for the person on trial are secured. *United States v. Cronic,* 466 U.S. 648, 653, 104 S.Ct. 2039, 2043, 80 L.Ed.2d 657 (1984). When one is deprived of representation of counsel, harm is presumed. *Strickland v. Washington,* 466 U.S. 668, 693, 104 S.Ct. 2052, 2067–68, 80 L.Ed.2d 674 (1984).

No particular requirements other than "counsel" are specified in the Sixth Amendment. In the Amendment's context, "counsel" means a lawyer. The presumption is that the legal profession will maintain adequate standards through its licensing and disciplinary process to insure the advocate has a basic level of competency to represent the criminal defendant in an adversary proceeding. *Id.* at 688, 104 S.Ct. at 2064–65.

Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are the various kinds of state interference with counsel's assistance. Prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost.

*Id.* at 692, 104 S.Ct. at 2067. If counsel is not a licensed lawyer, harm is presumed without an inquiry into the adequacy of the representation.

When is harm presumed because of the licensing deficiency of counsel for the accused? There are three broad categories. Harm is presumed when the accused is represented by someone who has never been licensed to practice law for failure to meet substantive bar admission requirements. Representation by such a non-lawyer does not fulfill the mandate of the Sixth Amendment. *Solina v. United States,* 709 F.2d 160, 167 (2d Cir.1983); *People v. Felder,* 47 N.Y.2d 287, 418 N.Y.S.2d 295, 298–99, 391 N.E.2d 1274, 1277 (1979).

The second category consists of instances of technical impediments in counsel's credentials when he represented the accused. In these situations the right to counsel is not violated. Harm is not presumed, and the inadequacy of the representation must be shown. *See United States v. Bradford,* 238 F.2d 395 (2d Cir.1956) (attorney licensed in state court but not licensed in Federal court); *Wilson v. People,* 652 P.2d 595, 597 (Col.Ct. App.1982) (fulfillment of all requirements except taking the oath); *People v. Cornwall,* 3 Ill.App.3d 943, 277 N.E.2d 766, 768 (1976) (licensed out of state attorney failed to seek admission *pro hac vice* in Illinois); *State v. White,* 101 N.M. 310, 681 P.2d 736, 740 (1984) (licensed out of state lawyer failed to be accompanied by local counsel during trial in violation of local rules); *Hill v. State,* 393 S.W.2d 901, 904 (Tex.Crim.App.1965) (failure to pay bar dues resulting in a suspension from practice). In all of these situations the lawyer was not authorized to practice law in the forum in which the accused was represented. In spite of that prohibition from practicing law when and where the accused was defended, the courts have held that the accused had the assistance of counsel as required by the Sixth Amendment.

In the third category are those situations where counsel has been licensed but is disbarred. When the previously licensed lawyer is disbarred, the courts divide on the result under the Sixth Amendment. In the

Second Circuit disbarment is not necessarily the equivalent of non-admission. *United States v. Novak*, 903 F.2d 883, 889 (2d Cir. 1990); *Waterhouse v. Rodriquez*, 848 F.2d 375, 383 (2d Cir.1988), *cert. denied*, 493 U.S. 1003, 110 S.Ct. 564, 107 L.Ed.2d 558 (1988). In *Waterhouse*, a lawyer who was disbarred for failing to represent clients after taking their fees and for misappropriating clients funds was counsel for Sixth Amendment purposes. But, a lawyer who was disbarred for fraudulently obtaining his law license did not meet the requirement of the Sixth Amendment. *Novak*, 903 F.2d at 889. A fraudulently obtained license is the equivalent of no license because, had the true facts been known, no law license would have issued. *Id.*

Similarly, a Texas court of appeals held that a lawyer who was disbarred prior to his representation of the accused was the equivalent of "no counsel", and the accused Sixth Amendment's rights were violated. *Ex Parte Williams*, 870 S.W.2d 343, 348 (Tex. App.—Fort Worth 1994, pet. ref'd.) The particular holding in the case was that the trial court's action in granting a mistrial upon learning of the lawyer's disbarment did not bar subsequent prosecution because the trial judge had no choice but to grant the mistrial.

I do not think it meaningful, in the Sixth Amendment context, to differentiate between disbarment or suspension from practice. The inquiry should be competency to represent the accused in a criminal proceeding. The license to practice law creates a presumption of competency. If a person has never been licensed, there is no such presumption of competency, harm is presumed and the Sixth Amendment is violated. Likewise, if the license to practice was obtained fraudulently, so that it should have never been issued, harm should be presumed.

If the license is lost or suspended because of incompetency or failure to meet required educational standards, I would hold that harm is presumed, because both go to the knowledge and ability to adequately represent the client.

Here counsel's license was suspended for failure to respond to an inquiry of a bar disciplinary committee. The record is silent as to what the committee was investigating

when counsel refused to respond. There being no evidence that his license was suspended because his knowledge, training or skills were inadequate, I am not prepared to presume he inadequately represented his client, the defendant below.

I respectfully dissent.