Vance Alan HENSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–94–416–CR.

Court of Appeals of Texas,
Corpus Christi.

Jan. 25, 1996.

---

Richard W. Rogers, III, Corpus Christi, for appellant.

Wiley L. Cheatham, District Attorney, Robert C. Lassman, Asst. District Attorney, Cuero, for appellee.

Before SEERDEN, C.J., and DORSEY and HINOJOSA, JJ.

## OPINION

HINOJOSA, Justice.

A jury found appellant, Vance Alan Henson, guilty of possession of more than 400 grams of flunitrazepam, a controlled substance, and the trial court assessed punishment at fifty years in the Institutional Division of the Texas Department of Criminal Justice and a $25,000 fine. Appellant challenges the conviction by six points of error. We affirm.

On February 3, 1993, Department of Public Safety (DPS) Troopers Rudy Jaramillo and Darren Bohne stopped a vehicle in Goliad County for speeding. The vehicle was traveling 68 miles per hour in a 55 mile per hour zone. The driver and owner of the car was Vivian Hausler. Appellant, Hausler's stepbrother, was a passenger in the car. Trooper Jaramillo asked Hausler to walk to the rear of the vehicle so that he could talk to her. Hausler told Jaramillo that she and appellant had driven from Houston to Laredo to visit her grandmother. After noting that Hausler was acting very nervous and finding out that she had visited her grandmother for only forty-five minutes (after a six-hour drive from Houston), Jaramillo questioned appellant. Appellant told the trooper that he and Hausler had gone to Laredo to meet friends; that he knew nothing about a grandmother. Because of these conflicting stories, Jaramillo asked Hausler for consent to search her vehicle. Although Hausler hesitated and conferred with appellant, she ultimately agreed to allow the search. Jaramillo subsequently found five plastic bags containing pills. The pills were confiscated and later determined to be flunitrazepam, a controlled substance.

Appellant and Hausler were indicted for unlawful, knowing, and intentional possession of flunitrazepam in the amount of 400 grams or more. The State offered Hausler a reduced sentence in exchange for her testimony against appellant. Appellant pleaded not guilty, but the jury found him guilty as charged in the indictment. The trial court denied appellant's motion for new trial.

By his second point of error, appellant contends that the evidence was insufficient to prove that the controlled substance, flunitra-

zepam, weighed 400 grams or more by aggregate weight.

The standard for reviewing the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Garcia v. State,* 887 S.W.2d 862, 867 (Tex.Crim.App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1368, 131 L.Ed.2d 223 (1995); *Nelson v. State,* 848 S.W.2d 126, 131 (Tex. Crim.App.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 100, 126 L.Ed.2d 66 (1993); *Valdez v. State,* 776 S.W.2d 162, 165 (Tex.Crim.App. 1989), *cert. denied,* 495 U.S. 963, 110 S.Ct. 2575, 109 L.Ed.2d 757 (1990).

DPS chemist Donald Thain testified that he tested one pill from each of five envelopes, and that each pill tested positive for flunitrazepam. Next, Thain analyzed one pill from the entire lot to determine the percentage of substances that made up the pill. Thain determined that the pill contained 1.1% flunitrazepam by weight, that 94% of the pill was lactose, and that the composition of the remainder was unknown. Thain testified that lactose merely adds bulk and does not affect the chemical composition of the flunitrazepam. The total weight of the pills was 483 grams. By extrapolating from his analysis, Thain determined the total weight of flunitrazepam and lactose to be 462 grams. Thain testified that all the pills had the same markings and color and were the same size. Thain had been a DPS chemist for nineteen years and during that time, conducted approximately twenty thousand tests to identify unknown substances.

On cross-examination, Thain admitted that it was possible for the lot of pills to contain placebos, but he stated that such a situation was highly unlikely. Appellant contends that because Thain did not test at least one pill from each of the five bags, the jury's decision was speculative and not grounded on sufficient evidence.

The jury, as trier of fact, is the sole judge of a witness' credibility and is free to believe or reject all or any part of the testimony. *Williams v. State,* 692 S.W.2d 671, 676 (Tex.Crim.App.1984). Expert witness testimony regarding the quantity and nature of controlled substances based upon visual observation is proper evidence. *McGlothlin v. State,* 749 S.W.2d 856, 857 (Tex.Crim.App. 1988); *Gabriel v. State,* 842 S.W.2d 328, 332 (Tex.App.—Dallas 1992), *aff'd,* 900 S.W.2d 721 (Tex.Crim.App.1995). The manner of testing a substance by random sampling goes only to the weight the jury may give to the tested substances in determining that the untested substance is the same as the tested substance. *Gabriel v. State,* 900 S.W.2d 721, 722 (Tex.Crim.App.1995).

After viewing the evidence in the light most favorable to the jury's verdict, we hold that any rational trier of fact could have found beyond a reasonable doubt that the controlled substance, flunitrazepam, weighed 400 grams or more by aggregate weight. The State showed, through Thain's testimony, that one pill randomly selected from each of five envelopes was tested for the presence of a controlled substance. It was conclusively established that each of the five pills tested contained flunitrazepam. The State also established that the chemist tested one pill from the entire lot in order to determine the percentage weights of the various substances contained in the pill. After a visual inspection, the chemist determined that the rest of the pills were identical to the one tested. Based on the percentages and the total weight of the lot, the chemist determined the total weights for the substances present in the pills.

It was rational for the jury to conclude that pills which had the same markings, color, and size were in fact the same substance. In addition, appellant could have refuted this evidence by conducting independent chemical tests on the pills in the five envelopes. *See* TEX.CODE CRIM.PROC.ANN. art. 39.14 (Vernon 1979); *Gabriel,* 900 S.W.2d at 722. We overrule appellant's second point of error.

By his first point of error, appellant complains that the trial court erred in denying his motion to suppress the evidence obtained during the search of the duffle bag. Appellant contends that Trooper Jaramillo did not

have valid consent or probable cause to search the duffle bag. Appellant relies on 1) the Fourth and Fourteenth Amendments to the United States Constitution, 2) article 1, section 9 of the Texas Constitution, and 3) article 38.23 of the Texas Code of Criminal Procedure.

Both the federal and state constitutions protect citizens against unreasonable searches and seizures. U.S. CONST. amend. IV; TEX. CONST. art. I § 9. A search conducted without a warrant based on probable cause is *per se* unreasonable. *Juarez v. State,* 758 S.W.2d 772, 775 (Tex.Crim.App. 1988). No evidence obtained by an officer in violation of the Constitution or laws of the United States or the State of Texas shall be admitted into evidence against the accused during the trial of any criminal case. TEX. CODE CRIM.PROC.ANN. art. 38.23 (Vernon Supp.1993); *Cardenas v. State,* 857 S.W.2d 707, 710 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd); *Flores v. State,* 824 S.W.2d 704, 705 (Tex.App.—Corpus Christi 1992, pet. ref'd). Any protection afforded, however, is waived when an individual consents to a search. *Juarez,* 758 S.W.2d at 775. A consent to search may be oral and still be valid. *Montoya v. State,* 744 S.W.2d 15, 25 (Tex. Crim.App.1987), *cert. denied,* 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988). The burden of proof by clear and convincing evidence is on the prosecution to show that the consent was freely and voluntarily given. *Juarez,* 758 S.W.2d at 775. This burden requires the prosecution to show the consent was positive and unequivocal, and there must not be duress or coercion, actual or implied. *Id.* Voluntariness is a question of fact to be determined from the totality of all the circumstances. *Meeks v. State,* 692 S.W.2d 504, 510 (Tex.Crim.App.1985).

Appellant, a passenger in the car, asserts that his Fourth Amendment rights were violated by the search and that the evidence seized during the search must be suppressed. Appellant argues that there was no voluntary consent to search, or if there was consent, it did not extend to the duffel bag. Moreover, appellant contends that Hausler did not have the authority to consent to a search of all the luggage. Finally, appellant claims that Trooper Jaramillo had no probable cause to search the vehicle.

Whether a search is reasonable under the Fourth Amendment is an issue of law that we review *de novo. Higbie v. State,* 780 S.W.2d 228, 230 (Tex.Crim.App.1989). A mere passenger can challenge the search of the automobile in which he was riding if the search resulted from an infringement of the passenger's Fourth Amendment rights. *Lewis v. State,* 664 S.W.2d 345, 348 (Tex. Crim.App.1984). Consent to search a vehicle is not required from a passenger, however, where the permission to search was obtained from the owner who possessed authority over the premises or effects sought to be inspected. *Williams v. State,* 621 S.W.2d 609, 613 (Tex.Crim.App.1981); *see Pinkston v. State,* 501 S.W.2d 317, 318 (Tex.Crim.App.1973). Such consent is valid as to any items found within the area to be searched. *Williams,* 621 S.W.2d at 613. The scope of a consent search is limited by the terms of its authorization. *Montoya,* 744 S.W.2d at 25. The actual consent given is determined by an objective standard. *Florida v. Jimeno,* 500 U.S. 248, 251, 111 S.Ct. 1801, 1803–1804, 114 L.Ed.2d 297 (1991). In other words, the question is what would the typical reasonable person have understood by the exchange between the officer and the citizen? *Id.; Cardenas,* 857 S.W.2d at 710.

At the hearing on the motion to suppress, Trooper Jaramillo testified, and appellant does not dispute, that the vehicle was stopped for speeding. Only after noting Hausler's extreme nervousness and hearing the conflicting explanations for the trip, did the trooper become suspicious of what might be in the car and ask for consent to search the vehicle. Trooper Jaramillo then searched the vehicle twice before discovering the flunitrazepam. The trooper testified that he asked Hausler, the vehicle's owner, for consent to search the vehicle before each of the searches. Although Hausler was hesitant and consulted with appellant, the trooper testified she gave her oral consent both times. Appellant did not appear to object. In fact, Hausler asked appellant if she should consent to the search, and appellant told her that the car was hers. There was no evi-

dence to contradict Trooper Jaramillo's testimony that Hausler's consent was uncoerced.

Trooper Jaramillo testified that during the initial search, Hausler moved things around and appeared to be trying to distract him. No contraband was discovered. Although Trooper Jaramillo searched the luggage at Hausler's behest, Trooper Bohne informed him that he missed things. Jaramillo then conducted the second search, after asking Hausler to stand back. Upon searching a duffel bag that was not searched the first time, Trooper Jaramillo discovered the flunitrazepam in tape wrapped plastic bags. The duffel bag also contained male clothing and toiletries.

Jaramillo testified that Hausler gave her oral consent to search the vehicle. As the owner of the vehicle, therefore, her consent gave Trooper Jaramillo the authority to inspect the items in the vehicle. *See Williams*, 621 S.W.2d at 613. A reasonable person could conclude that Hausler believed this to be true because she opened and offered luggage for the trooper's first inspection. Taken in this context, a person could reasonably believe that the consent also extended to the second search, including the duffel bag. *See Cardenas*, 857 S.W.2d at 710.

The evidence also shows that appellant was consulted before each search and did not object to or limit Trooper Jaramillo's actions concerning the duffel bag. Appellant cannot, therefore, claim that his Fourth Amendment rights were violated or that Hausler's consent did not extend to his belongings. Although appellant testified that no consent was given for the searches, on a motion to suppress, the trial court is the exclusive finder of fact and may choose to believe or disbelieve any or all of a witness's testimony. *Meek v. State*, 790 S.W.2d 618, 620 (Tex.Crim.App.1990). The findings should not be disturbed absent a clear abuse of discretion. *Id.* We are not at liberty to disturb any finding made by the trial court during a hearing on a motion to suppress if the finding is supported by the record. *Green v. State*, 615 S.W.2d 700, 707 (Tex.Crim.App.1980), *cert. denied*, 454 U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258 (1981). The

trial court implicitly made a finding that appellant's testimony was not credible, and we are bound to accept Trooper Jaramillo's version of the events because it is supported by the record. *See Meek*, 790 S.W.2d at 620–21. Based on a review of all the evidence presented at the hearing, we conclude that Trooper Jaramillo had reasonable suspicion concerning the contents of the vehicle and the demeanor of its occupants that would justify the search. We, therefore, overrule appellant's first point of error.

By his third, fourth, and fifth points of error, appellant complains that his trial counsel was ineffective. Appellant first contends that trial counsel was ineffective because, during the trial, counsel was suspended from the active rolls of the State Bar of Texas for non-compliance with the Minimum Continuing Legal Education (MCLE) requirements.

The Sixth Amendment requires that an accused have both counsel and reasonably effective assistance of counsel. U.S. CONST. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 686–692, 104 S.Ct. 2052, 2063–2067, 80 L.Ed.2d 674 (1984); *Narvaiz v. State*, 840 S.W.2d 415, 433 (Tex.Crim.App. 1992), *cert. denied*, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). Representation of counsel under the Sixth Amendment means at the very least, "representation by a licensed practitioner." *United States v. Novak*, 903 F.2d 883, 887 (2nd Cir.1990) (citing *Solina v. United States*, 709 F.2d 160, 167 (2nd Cir.1983)); *Cantu v. State*, 897 S.W.2d 389, 392 (Tex.App.—Corpus Christi 1994, pet. granted). When defense counsel is "not authorized to practice law in any state, and the lack of such authorization stemmed from failure to seek it or from its denial for a reason going to legal ability, such as failure to pass a bar examination, or want of moral character," the Sixth Amendment right to counsel will not be met. *Novak*, 903 F.2d at 887; *Cantu*, 897 S.W.2d at 392. Moreover, when there is an actual or *per se* denial of representation of counsel, a defendant "is entitled to relief without proving that he was prejudiced by the deprivation." *Strickland v. Washington*, 466 U.S. at 669, 104 S.Ct. at 2055; *United States v. Taylor*, 933 F.2d 307,

312 (5th Cir.), *cert. denied,* 502 U.S. 883, 112 S.Ct. 235, 116 L.Ed.2d 191 (1991); *Novak,* 903 F.2d at 886 (citing *Holloway v. Arkansas,* 435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978)); *Cantu,* 897 S.W.2d at 392. However, where a defendant's attorney has been suspended for mere technical violations such as nonpayment of bar dues, these grounds are insufficient to find a *per se* violation of the right to counsel. *E.g., Beto v. Barfield,* 391 F.2d 275 (5th Cir.1968) (failure to pay bar dues); *Hill v. State,* 393 S.W.2d 901, 904 (Tex.Crim.App.1965) (failure to pay bar dues); *Parrish v. State,* 840 S.W.2d 63, 66 (Tex.App.—Amarillo 1992, no pet.) (failure to pay bar dues); *see Cantu,* 897 S.W.2d at 392 (discussing distinction between technical violations and substantive ethical violations). To receive a reversal because of a violation of the Sixth Amendment right to counsel, appellant must demonstrate that trial counsel committed actual errors or omissions which prejudiced the defense. *Parrish,* 840 S.W.2d at 66; *see Hill,* 393 S.W.2d at 904 (overruling *Martinez v. State,* 167 Tex.Crim. 97, 318 S.W.2d 66 (1958), where death penalty was reversed when trial counsel was suspended for failing to pay State Bar dues although no complaint had been asserted about counsel's incompetence).

Appellant retained Jorge Canales as his trial counsel. On June 16, 1994, the State Bar of Texas suspended Canales from its active rolls for non-compliance with the MCLE requirements. Appellant's trial commenced in July 1994, and the trial court assessed punishment at fifty years in prison and a $25,000 fine. Canales satisfied his MCLE requirements and was reinstated on August 19, 1994. Pursuant to the State Bar Rules, this reinstatement was retroactive to the date of the original suspension. Tex. Gov't Code Ann., tit. 2, subtit. G app. (Vernon 1988) (State Bar Rules art. XII, § 10).

██ In *Hill,* a case involving an attorney's non-payment of State Bar dues, the Court of Criminal Appeals stated:

The status of a delinquent attorney not being a member of the State Bar of Texas does not place him in the position of being "unlicensed to practice law in this State." *He only has to pay his dues* (he does not

vacate the office of Attorney-at-Law) to resume his status as a "practicing lawyer." Such attorney does not have to again show his fitness or qualifications to practice law. He does not have to be readmitted to the practice. His competency as an attorney has not been diminished. He faces no future disbarment proceedings. He automatically resumes his status as an active member of the State Bar of Texas.

*Hill,* 393 S.W.2d at 904 (emphasis in original). We conclude that *Hill* also applies to an attorney's non-compliance with the State Bar's Minimum Continuing Legal Education requirements.

██ We hold that Canales did not suddenly become incompetent merely because he failed to comply with the State Bar's Minimum Continuing Legal Education requirements. Canales was reinstated to his former status as a practicing attorney as soon as he presented the State Bar with proof of compliance with the MCLE requirements. We overrule appellant's third point of error.

Accordingly, appellant will have to prove that Canales was ineffective because of actual errors or omissions committed during the course of his representation.

By his fourth and fifth points of error, appellant contends that trial counsel's assistance was ineffective because he failed to interview a key defense witness and because counsel did not request an accomplice witness instruction.

██ Our review of counsel's performance must be highly deferential. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065; *Garcia,* 887 S.W.2d at 880. The burden of proving ineffective assistance of counsel is on the appellant and is one which requires proof by a preponderance of the evidence. *Stafford v. State,* 813 S.W.2d 503, 506 n. 1 (Tex. Crim.App.1991); *Moore v. State,* 694 S.W.2d 528, 531 (Tex.Crim.App.1985); *Cannon v. State,* 668 S.W.2d 401, 403 (Tex.Crim.App. 1984). An allegation of ineffective assistance of counsel will be sustained only if it is firmly founded and if the record affirmatively demonstrates counsel's alleged ineffectiveness. *Ex parte McWilliams,* 634 S.W.2d 815, 819

(Tex.Crim.App.1980), *cert. denied,* 459 U.S. 1036, 103 S.Ct. 447, 74 L.Ed.2d 602 (1982).

The standard of review for ineffective assistance of counsel during the guilt/innocence phase of the trial was set forth in *Strickland. Vasquez v. State,* 830 S.W.2d 948, 949 (Tex.Crim.App.1992); *Craig v. State,* 825 S.W.2d 128, 129 (Tex.Crim.App. 1992); *Hernandez v. State,* 726 S.W.2d 53, 57 (Tex.Crim.App.1986). A defendant seeking relief must demonstrate 1) that counsel's performance failed to constitute reasonably effective assistance by falling below an objective standard of reasonableness under prevailing professional norms, and 2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *Washington v. State,* 771 S.W.2d 537, 545 (Tex.Crim.App.), *cert. denied,* 492 U.S. 912, 109 S.Ct. 3229, 106 L.Ed.2d 578 (1989); *Hernandez,* 726 S.W.2d at 55. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Whether this standard has been met is to be judged by "the totality of the representation." *Ex parte Welborn,* 785 S.W.2d 391, 393 (Tex.Crim.App.1990).

Isolated instances in the record reflecting errors of commission or omission do not cause counsel to become ineffective, nor can ineffective assistance of counsel be established by isolating or separating out one portion of the trial counsel's performance for examination. *Id.* An applicant must show omissions or other mistakes made by counsel that amount to professional errors of a magnitude sufficient to raise a reasonable probability that the outcome of the trial would have been different but for the errors. *Id.* The test is to be applied at the time of trial not through hindsight. *Id.* A criminal defense lawyer must have a firm command of the facts of the case as well as governing law before he can render reasonably effective assistance of counsel. *Ex parte Welborn,* 785 S.W.2d at 393. A natural consequence of this notion is that counsel has the responsibility to seek out and interview potential witnesses. *Id.* Failure to do so is to be

ineffective, if not incompetent, where the consequence is that the only viable defense available to the accused is not advanced. *Ex parte Duffy,* 607 S.W.2d 507, 517 (Tex.Crim. App.1980).

Appellant contends that Canales did not interview Zachry Corlay before calling him as a defense witness. Appellant relies on the testimony of his girlfriend, Michelle Croggs, to support his contention. Croggs testified at the hearing on appellant's motion for new trial that she believed Canales and Corlay met for the first time at the courthouse on the day Corlay was called as a witness. However, the record does not clearly indicate how Croggs arrived at this belief. Moreover, there is no evidence that Canales knew about Corlay before that day. Appellant did not testify at the hearing and did not call either Corlay or Canales to prove what Croggs believed. Although Canales commented during closing argument at the trial that "we hadn't even talked to [Corlay] until we found out what Vivian was saying yesterday," this does not prove that Canales knew of this potential witness or that a telephone interview was not conducted the night before Corlay's testimony.

Throughout the course of the trial, Canales constantly tried to call Hausler's testimony into question. Hausler testified that she and appellant spent all but about forty-five minutes together in Mexico. She claimed that before reentering the U.S., they purchased a case of beer and a bottle of liquor and then crossed the border together. Corlay's testimony was intended to give appellant an alibi for his time in Mexico away from Hausler. Through his examination of Corlay, Canales was able to cast doubt on Hausler's testimony about who purchased the alcoholic beverages and whether the pair were really separated for only forty-five minutes. Canales elicited from Corlay that appellant reentered the U.S. without Hausler. This was important because Hausler testified that appellant told her just before crossing the border that he was bringing flunitrazepam into the U.S. We conclude, that even if Canales failed to interview Corlay before he testified, such failure did not deny appellant of his only viable defense.

By his fifth point of error, appellant complains that Canales was ineffective because he did not object to the trial court's failure to include an accomplice witness instruction in the jury charge and he did not seek to secure the proper instruction.

The first prong of *Strickland* requires us to determine whether trial counsel's performance failed to constitute reasonably effective assistance. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. The failure of counsel to request an accomplice witness instruction when facts warrant such an instruction constitutes deficient performance. *Ex parte Zepeda*, 819 S.W.2d 874, 877 (Tex. Crim.App.1991); *see Hernandez v. State,* 907 S.W.2d 654, 660 (Tex.App.—Corpus Christi 1995, pet. filed) (Hinojosa, J., dissenting). One who is indicted for the same offense that the defendant is charged with is an accomplice as a matter of law. *Ex parte Zepeda*, 819 S.W.2d at 876.

In this case, Hausler was indicted along with appellant for possession of flunitrazepam. Thus, Hausler was an accomplice as a matter of law. Hausler was also a key witness for the State. Hausler testified that appellant taped the drugs to his body in Mexico and carried them that way through two border checkpoints. She further testified that after leaving the second checkpoint, appellant removed the drugs from his body and placed them in his duffel bag. Hausler is the only witness who stated with certainty that the bag belonged to appellant.

Because Canales did not request an accomplice witness instruction, we conclude that his performance was deficient. We next apply the second prong of the *Strickland* standard which requires us to determine whether there is a reasonable probability that the result of the trial would have been different but for counsel's deficient performance. 466 U.S. at 694, 104 S.Ct. at 2068; *see Hernandez*, 907 S.W.2d at 660 (Hinojosa, J., dissenting).

An instruction concerning accomplice witness testimony would have informed the jury that it could not convict applicant without corroborating evidence which tended to connect applicant to the commission of the offense, and that evidence merely showing commission of the offense would not be sufficient. *See* Tex.Code Crim.Proc.Ann. art. 38.14 (Vernon 1979). If there is a reasonable possibility that a rational jury would convict the defendant without the accomplice witness testimony, then trial counsel is not ineffective for failing to request the appropriate instruction. *Ex parte Zepeda*, 819 S.W.2d at 876.

Trooper Jaramillo testified that two people occupied the vehicle, one of whom was the appellant. Appellant told the trooper that he had been in Mexico. The vehicle contained separate luggage for a male and female. A search of a duffel bag which appeared to belong to a male, resulted in the discovery of five taped packages. Appellant asked if the packages contained birth control pills. Jaramillo then opened the packages and discovered that they contained pills. The State introduced the taped packages into evidence, and the record shows that hairs similar to male body hairs were stuck to the tape. There was no evidence indicating that the pills were obtained legally. Based on this testimony, the jury could have believed that the duffel bag and hairs belonged to appellant. Appellant's question about birth control pills could be viewed as knowledge of the packages' contents.

On cross examination, the troopers admitted that no attempt was made to lift fingerprints from the packages, nothing positively identified the duffel bag as belonging to appellant, and no attempt was made to match appellant's body hairs with those stuck to the tape. Trial counsel pointed out faults in Hausler's testimony and produced a witness to contradict her version of the events in Mexico. Throughout the trial, Canales emphasized that appellant was a mere passenger in the car, did not own the duffel bag, and had no knowledge that the flunitrazepam was present in the car. In addition, during closing argument, counsel discussed the portion of the jury charge regarding parties. He stressed that a person cannot be a party to a crime merely because he is present at the scene. Canales had a good understanding of the facts, and he attempted to distance appellant from Hausler's professed guilt.

Disregarding Hausler's testimony, we conclude that any rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt. We hold there is no reasonable probability that the result of the trial would have been different but for counsel's deficient performance. We overrule appellant's fourth and fifth points of error.

By his sixth point of error, appellant contends that the trial court committed fundamental error by failing to charge the jury on accomplice witness testimony and that this failure caused appellant egregious harm.

■■■■ We are admonished not to set aside criminal convictions because of error in the trial court's charge to the jury unless the error "was calculated to injure the rights of the defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial." *Saunders v. State*, 817 S.W.2d 688, 690 (Tex.Crim.App.1991); *see* TEX.CODE CRIM.PROC.ANN. art. 36.19 (Vernon 1981). Whether we search for "some error" preserved by objection at trial or for "egregious error" urged for the first time on appeal, our approach to an assessment of its harmful impact is the same. *Saunders*, 817 S.W.2d at 690. In both situations the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *Id.* (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984)). Under *Almanza*, omission of an unrequested jury instruction "applicable to the case" calls for a new trial only when the defendant was greatly disadvantaged by the omission. *Id.* at 692.

■■■■ When the State's most incriminating evidence against appellant is the testimony of an accomplice, our law requires that such testimony be corroborated by evidence connecting appellant with the offense before conviction is warranted. *Id.* Failure to inform the jury of this requirement makes it possible for rational jurors to convict even absent corroboration which they find convincing. *Id.* If the omission is not made known

to the trial judge in time to correct his error, appellate review must inquire whether jurors would have found the corroborating evidence so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive. Trooper Jaramillo's testimony as set forth at various points above, and evidence of hair stuck to the taped packages corroborated Hausler's testimony. This evidence, however, is sufficiently convincing on its own, and the jury could have convicted appellant without Hausler's testimony. Accordingly, we overrule appellant's sixth point of error.

We AFFIRM the judgment of the trial court.