In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00043-CR


______________________________




STEVEN PEARSON, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 05F0309-202




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 Before law enforcement officers used a crowbar to gain access to an outbuilding on Bowie
County property belonging to Patricia Story, Story had told them, among other things, that she had
no key to it and that the only person who used it was her son, Steven Pearson.

 When the officers asked to search the building used by Pearson, however, Story said, "I guess
just get into it however you want to." Inside, officers found a large quantity of methamphetamine. 
Pearson unsuccessfully sought to have the trial court suppress the results of that search, asserting that
it was illegal. After Pearson's motion to suppress was denied, Pearson pled guilty under a plea
agreement resulting in a sentence of nine years' imprisonment.

 On appeal, Pearson claims that his mother did not have authority to give the officers consent
to search the building and that, therefore, the trial court erred in failing to suppress the fruit of that
search. (1) We agree.

 At a hearing on a motion to suppress evidence, the trial court is the sole and exclusive trier
of fact and the judge of the credibility of witness testimony. Allridge v. State, 850 S.W.2d 471, 492
(Tex. Crim. App. 1991). We review the trial court's ruling on a motion to suppress under a
bifurcated standard of review, giving almost total deference to the trial court's determination of
historical facts and reviewing de novo the court's application of the law. Carmouche v. State, 10
S.W.3d 323, 327 (Tex. Crim. App. 2000). Consent to search is one of the well-established
exceptions to the constitutional requirements that officers have both a warrant and probable cause
before a search. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); Carmouche, 10 S.W.3d at
331.

 We examine whether, based on this record, Story had actual or apparent authority to
authorize a search of the building in question. We conclude she had neither (1) actual nor
(2) apparent authority to consent to the search.




(1) Story Did Not Have Actual Authority to Consent to the Search

 A warrantless entry and search by law enforcement officers does not violate the Fourth
Amendment's protection against unreasonable searches and seizures if the officers have obtained the
consent of a third party who possesses common authority over the premises or effects to be searched.
United States v. Matlock, 415 U.S. 164, 170 (1974). "Common authority" rests "on mutual use of
property by persons generally having joint access or control for most purposes." Id. at 171 n.7. A
third party may properly consent to a search when the party has equal control over and equal use of
the premises being searched. Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002);
Becknell v. State, 720 S.W.2d 526, 528 (Tex. Crim. App. [Panel Op.] 1986); Rivera v. State, 59
S.W.3d 268, 273 (Tex. App.--Texarkana 2001, pet. ref'd); Corea v. State, 52 S.W.3d 311, 316 (Tex.
App.--Houston [1st Dist.] 2001, pet. ref'd).

 Where a third person, such as Story, is the supplier of the consent, we must determine
whether Story had "common authority over the premises or effects to be searched." Matlock, 415
U.S. at 170. Were Story in such a position, she would have had actual authority to give officers
consent for the search in question. See Malone v. State, 163 S.W.3d 785, 796 (Tex.
App.--Texarkana 2005, pet. ref'd).

 In Becknell, a father authorized a search of his adult son's bedroom, in the father's house. The
father told authorities he was allowed in the room only when his son was present, and the son had
the only key to the locked room. The Texas Court of Criminal Appeals found the father did not have
actual authority to authorize the search. Becknell, 720 S.W.2d at 528.

 In Corea, although Corea's bedroom door was open and his brother-in-law had access to
common areas of the apartment, the brother-in-law told officers at the scene that no one other than
Corea lived in the bedroom. The court concluded the brother-in-law did not have equal control and
access to the bedroom that would give him the authority to consent to a search of the bedroom. See
Corea, 52 S.W.3d at 316.

 This Court addressed this issue in Malone. Malone's deaf-mute brother lived in the same
house as Malone, but stayed in the living room, and one of the State's officers said that, to his
knowledge, the brother did not live in the same bedroom as Malone; we held the State failed to show
that the brother had actual authority to consent to a search of Malone's room. See Malone, 63
S.W.3d at 796-97.

 In Pearson's case, his mother testified at the suppression hearing that Pearson had the only
key to the building and that she had told him he could use the building and she did not need it. She
said Pearson was the only person who used the building, and that over a span of about two years, she
knew of no person going into the building without Pearson. Pearson's brother Mark, who also lived
with his mother, also said he did not recall ever seeing anyone in the building without Pearson, and
no one else used the building. Story said Pearson slept in the building about half the time; that
although he lived in her house with her, he had electricity and cable television service in the building
and would take his dinner from the house out to the building. And although Story did testify that
she was the owner of the property--including both the building and the land on which the building
was placed--we find it significant that she also said she stayed out of the building not only because
of Pearson's smoking habit, to which Story was allergic, but that Pearson "needed his privacy." 
Lacking common authority over the building, Story did not have actual authority to consent to a
search of that building, which was under Pearson's control.

(2) Story Did Not Have Apparent Authority to Consent to the Search

 When the facts do not support a finding of actual authority, a search is reasonable,
nonetheless, if the consent giver apparently has authority. Illinois v. Rodriguez, 497 U.S. 177, 188
(1990). In Rodriguez, the United States Supreme Court held that a warrantless entry by law
enforcement officers onto a person's premises does not violate the protection against unreasonable
searches and seizures under the Fourth Amendment when such entry is based on the consent of a
third party whom the officers, at the time of the entry, reasonably believe to possess common
authority over the premises, but who in fact does not possess such authority. We point out, though,
that the Texas Court of Criminal Appeals has not yet adopted the apparent authority doctrine. See
McNairy v. State, 835 S.W.2d 101, 105 (Tex. Crim. App. 1991); see also Malone, 163 S.W.3d at 797
n.5 (detailing Texas intermediate courts' treatment of apparent authority doctrine). Without formally
adopting the doctrine, the high court found it to be of some value in the resolution of McNairy. 
McNairy, 163 S.W.3d at 105. It noted that the apparent authority doctrine was helpful in
determining whether the officers were justified "in being where they were" when probable cause to
conduct a warrantless search arose. Id. Citing Rodriguez, the court went on to explain that, should
"ambiguous circumstances" arise which cast doubt on the effectiveness of the consent or the extent
of the consent given, the officers "must stop and make inquiries as to the continued effectiveness of
the consent." Id. The McNairy court rejected the application of the apparent authority doctrine
under the evidence in that case. Id. If the officers do not learn enough and if the circumstances
make it unclear whether the property is subject to "common authority" of the person giving consent,
"then warrantless entry without further inquiry is unlawful unless authority actually exists." 
Rodriguez, 497 U.S. at 188-89. The State bears the burden of proving that the person who gave
consent had the actual or apparent authority to do so. Id. at 181. The State cannot satisfy this burden
if officers proceed without making further inquiry into an ambiguous situation. Corea, 52 S.W.3d
at 317.

 If officers reasonably believed that the third party had common authority over the place to
be searched, then their good-faith mistake will not invalidate the search. This deference does not
mean, however, that they may rely on consent given in ambiguous circumstances or that clearly
appears unreasonable. Riordan v. State, 905 S.W.2d 765, 771 (Tex. App.--Austin 1995, no pet.). 
While the apparent authority doctrine should not be applied so strictly that it places too heavy a
burden on police, it cannot allow law enforcement officers to proceed without inquiry into
ambiguous circumstances or to always accept at face value the consenting party's apparent
assumption or claim of authority to allow the contemplated search. Id.

 Story testified that Pearson lived with her and her other son, Mark, at her home in the Red
Lick community near Texarkana, Texas. Story's home was on 5.38 acres of land which she owned
with her sister, who lived in a trailer on the back part of the property. Also on the property are an
"old garage, . . . a shed, and . . . [a] storage building, [measuring] eight by twenty." Although
Pearson lived in the house with Story, he also had bedding, a microwave oven, electricity, and cable
television service in the storage building, that is, the building used by Pearson. He slept in the
building frequently, and sometimes took food from the house to the building. Pearson, like his father
before him, used the building as a place to smoke, as Story did not allow smoking in her home. 
Pearson had the only key to the lock on the building's door; Story had no personal property in the
building, and when she would knock on the door to speak to Pearson, he would come out to talk to
her. Before the officers showed up to search the building April 20, 2004, she had not been in the
building for several months or longer. Neither she nor Mark knew of anyone ever being in the
building without Pearson present. Story did not think anyone had been in the building without
Pearson in almost two years. Story had told Pearson he could use the building and placed no
restrictions on his use. She said she did not need the building and felt Pearson needed the building
for "his privacy." 

 The State presented no evidence, though it was its burden to demonstrate the search was
valid. See Ford v. State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) (where search occurred
without warrant, burden shifts to State to establish validity of search). The only evidence of what
steps law enforcement took to obtain consent to search the building came from Story. According
to her, they asked to search, and she told them that she had no key and that Pearson was the "only
one that went out there." She said she was "so upset and so shook up" when the officers arrived; and
when they said they wanted to search the building, she told them, "Well, I don't have a key. And
so I went out there with them then, and they said, well, if you don't have a key. I said, well, I guess
just get into it however you want to." 

 If the State performs a warrantless search implicating the protections of the Fourth
Amendment, the circumstances surrounding the search (here, the obtaining of consent from Pearson's
mother) must be reasonable. Rodriguez, 497 U.S. at 188. Whether the officers acted reasonably is
judged by an objective standard: whether the facts available to the officer when the consent is given
would warrant a person of reasonable caution in believing the consenting party had authority over
the premises. See id.; see also Corea, 52 S.W.3d at 317. The burden cannot be met if the officers,
faced with an ambiguous situation, nevertheless proceed without making further inquiry. Id.

 In Riordan, officers got consent from an elderly woman, the only person present when the
officers arrived to investigate a tip from Riordan's twelve-year-old son. Riordan, 905 S.W.2d at
768-69. The officers learned the lady lived in another residence and the homeowners would be
home shortly. Id. at 768. At the suppression hearing, the woman was shown to be Riordan's mother-in-law; she ate her meals at the Riordan home and sometimes watched television there; she
sometimes babysat the twelve-year-old son. Id. at 769. Riordan's wife testified her mother was
expressly denied access to the two rooms where marihuana was found. Id.

 "If the facts and circumstances are such that it would be objectively reasonable to conclude
that the third party who consented to the search did not have common authority to do so, the police
officers's [sic] subsequent search will be invalid." Id. at 772 (citation omitted). The Austin court
concluded, in Riordan, "[t]he officer's superficial and cursory questioning of [the mother-in-law]
simply did not disclose sufficient information to support a reasonable belief that she had the
authority to permit the search." Id. (citation omitted). Although the State, in the instant case, claims
that Story's ownership of the property is sufficient to give her authority to consent to the search,
"mere property interest does not imply 'common authority.'" Id. (citing United States v. Whitfield,
939 F.2d 1071, 1075 (D.C. Cir. 1991)). Common authority is not implied from bare ownership
interest in the location searched, but rests in joint access or control. Matlock, 415 U.S. at 172;
Maxwell, 73 S.W.3d at 281-82.

 Based on the state of this record, we find the State failed to demonstrate it was objectively
reasonable for the law enforcement officers to conclude Story had authority to consent to a search
of the building. We find this situation comparable to those in Bucknell, Malone, Riordan, and
Corea. As the Austin court said in Riordan, "[t]he officers could not infer such common authority
from [the mother-in-law's] mere presence or relationship to appellant" in light of the totality of the
circumstances. Riordan, 905 S.W.2d at 772. 

 The State having failed to demonstrate a reasonable basis on which consent was obtained,
we sustain this point of error, reverse the trial court's conviction and sentence, and remand this case
to the trial court for further proceedings consistent with this opinion.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: October 1, 2007

Date Decided: December 14, 2007


Do Not Publish
1. In a separate point of error, Pearson claims the trial court erroneously placed on him, rather
than on the State, the burden of proof at the suppression hearing. A search conducted without a
warrant based on probable cause is per se unreasonable. Juarez v. State, 758 S.W.2d 772, 775 (Tex.
Crim. App. 1988); Henson v. State, 915 S.W.2d 186, 193 (Tex. App.--Corpus Christi 1996, no pet.). 
The burden shifts to the State to prove its reasonableness. Russell v. State, 717 S.W.2d 7, 9 (Tex.
Crim. App. 1986).


 At the beginning of the suppression hearing, the following exchange occurred:


 [State's attorney]: Judge, before he calls his first witness I believe that there will be an
initial burden by the State to establish, and the State would agree on the record that there was
a search conducted without a warrant. 


 The Court: Okay. And you agree with that stipulation?


 [Defense Attorney]: Yes, sir, I do.


 The Court: So it shifts now over to you. Very good, thank you very much . . . . 


Initially, we do not understand the trial court's comment as placing the burden of proof on Pearson. 
Also, even if that was the way Pearson construed the trial court's statement, or even if the trial court
actually was placing the burden on Pearson instead of the State, Pearson made no objection. To
preserve error for appellate review, (1) the complaining party must make a timely objection
specifying the grounds for the objection, if the grounds are not apparent from the context; (2) the
objection must be made at the earliest possible opportunity; and (3) the complaining party must
obtain an adverse ruling from the trial court. See Tex. R. App. P. 33(a)(1); Garza v. State, 126
S.W.3d 79, 81-82 (Tex. Crim. App. 2002). Since those steps were not taken, this issue was not
preserved for our review.



223 (Tex. 1999). On appeal,
the movant must show that there is no material fact issue and that the movant is entitled
to judgment as a matter of law. Limestone Prods. Distrib., Inc., 71 S.W.3d at 311;
Rhone-Poulenc, Inc., 997 S.W.2d at 223.
General Background
          The lawsuit is based on the application of the Whistleblower Act, which is designed
to enhance openness in government and compel the government's compliance with law
by protecting those who inform authorities of wrongdoing. Castaneda v. Tex. Dep't of
Agric., 831 S.W.2d 501, 503 (Tex. App.—Corpus Christi 1992, writ denied). The Act
evidences two legislative purposes: (1) to protect public employees from retaliation by their
employer when, in good faith, employees report a violation of the law, and (2) in
consequence, to secure lawful conduct on the part of those who direct and conduct the
affairs of public bodies. Travis County v. Colunga, 753 S.W.2d 716, 718–19 (Tex.
App.—Austin 1988, writ denied). Because the Act is remedial in nature, it should be
liberally construed to effect its purpose. Castaneda, 831 S.W.2d at 503; Davis v. Ector
County, 40 F.3d 777, 785 (5th Cir. 1994).
Roberts' Allegations at Trial
          In her petition, Roberts alleged that, because she warned her superior and members
of the Hospital's governing board that the planned purchase of a CT scanner was not being
made by competitive bid as required by law, her superiors retaliated against her by failing
to assign her to a newly created "lead tech" position, and ultimately terminated her
employment. She also complains that the actions by the Hospital's officials were based
on their disapproval of her efforts to professionalize her department. She contends this is
shown by their written reactions to her efforts, dating back to 1991, to maintain or create
a professional, safe, and fairly administered work environment.
Analysis
          The Hospital does not contest the description of the Hospital as a local
governmental entity, and admits Roberts was a public employee. That element of the
Whistleblower Act is therefore not an issue. Although the Hospital does contend Roberts'
actions were not taken in good faith, the evidence on that is in dispute; thus, a fact issue
would exist.


 Similarly, although the Hospital argues there was no evidence of an adverse
personnel action, the summary judgment proof as described above clearly shows a dispute
in the evidence on that matter as well.
           The controlling issues raised by the Hospital are that Roberts provided nothing to
show that: 1) any specific applicable law was violated—thus no evidence of any illegal
conduct, and alternatively, if a law was so violated, 2) Roberts never reported such
violation to "appropriate law enforcement authority." In the absence of either element, a
plaintiff suing under the Whistleblower Act cannot prevail.


 
          In this case, the dispositive question is whether, assuming a law was violated,
Roberts reported that violation to an appropriate law enforcement authority so that the
Whistleblower Act protections would apply to her situation. The Whistleblower Act
provides that an appropriate law enforcement authority is a governmental entity authorized
to "regulate under or enforce the law alleged to be violated in the report." Tex. Gov't Code
Ann. § 554.002(b)(1) (Vernon 2004). Alternatively, an appropriate law enforcement
authority is a governmental entity authorized to "investigate or prosecute a violation of
criminal law." Tex. Gov't Code Ann. § 554.002(b)(2) (Vernon 2004). The language
controlling our review was set out recently.
Under the statutory definition, it is clearly not enough that a government
entity has general authority to regulate, enforce, investigate, or prosecute. 
Rather, to determine if a governmental entity qualifies as an "appropriate law
enforcement authority," we are bound to construe that term as the statute
defines it. See Tex. Gov't Code § 311.011(b); Faircloth, 898 S.W.2d at 274; 
Tijerina, 846 S.W.2d at 827. And the statute defines that term as a
governmental entity authorized to regulate under or enforce "the law alleged
to be violated in the report," or to investigate or prosecute "a violation of
criminal law." See Tex. Gov't Code § 554.002(b). In other words, the
particular law the public employee reported violated is critical to the
determination. 

Tex. Dep't of Transp. v. Needham, 82 S.W.3d 314, 319–20 (Tex. 2002).
 
          The courts have held that a report is made to an appropriate law enforcement
authority if the authority is a part of a state or local governmental entity or of the federal
government that the employee in good faith believes is authorized to: 
          ∙         regulate under or enforce the law alleged to be violated in the report
          ∙         investigate or prosecute a violation of criminal law.
Id. at 319; 3 J. Hadley Edgar, Jr. & James B. Sales, Texas Torts and Remedies
§ 45.06[13](c) (2003).
          In this case, taking all allegations in the light most favorable to the nonmovant,
Roberts simply did not report the alleged violation to an appropriate law enforcement
authority. She reported it to her superior, and ultimately to members of the Hospital board. 
Although it is reasonable to conclude that, like all individuals, these hospital officials have
a duty to obey the law, as set out in Needham, that is not the same as being a
governmental entity authorized to regulate under or enforce "the law alleged to be violated
in the report," or to investigate or prosecute "a violation of criminal law." See Needham,
82 S.W.3d at 319. 
          Roberts notes that in her affidavit she states she called the Texas Attorney
General's office,


 and it informed her that she first needed to go through the grievance
process. Roberts failed to adduce summary judgment evidence that this contact with the
Attorney General's office satisfied the underlying requirement that she make a complaint
to a law enforcement authority, and as a result of that action alone, the Hospital acted
unlawfully by terminating or otherwise affecting her employment. Roberts further failed to
provide summary judgment evidence that the Attorney General's office is authorized to
regulate under or enforce "the law alleged to be violated in the report." Id. 
          Therefore, under the statute, Roberts has neither pled nor provided summary
judgment proof of facts that would support this required element of the action, and a no-evidence summary judgment was properly rendered on this basis.
          We affirm the judgment.


                                                                           Donald R. Ross
                                                                           Justice 

Date Submitted:      February 16, 2005
Date Decided:         March 15, 2005