**Warren HUDSON, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 06–02–00211–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted Jan. 22, 2004.

Decided Feb. 5, 2004.

Matt Keil, Keil & Goodson, Connie Mitchell, Arkansas Juvenile Court, Texarkana, for appellant.

Michael Shepherd, Asst. Dist. Atty., for appellee.

Before MORRISS, C.J., ROSS and CORNELIUS,* JJ.

---

## OPINION

Opinion by Justice ROSS.

Warren Hudson was convicted by a jury for possessing marihuana in the amount of five pounds or less but more than four ounces, a state jail felony.[1] The jury assessed his punishment at two years' confinement and a $5,000.00 fine.[2] Hudson appeals, contending (1) the evidence is legally and factually insufficient to prove he possessed the marihuana; (2) the trial court erred in continuing the punishment phase of trial in his absence; (3) the trial court erred in its response to questions from the jury; (4) the State's remarks during closing argument were manifestly improper; and (5) he received ineffective assistance of counsel.

### Factual Background

On January 26, 2000, Hudson and his passenger, Keith Macklin, were stopped on Interstate 30 by Officer Gary Brown of the Texarkana, Texas, Police Department, for speeding. Hudson provided his driver's license and advised the officer the car was rented. Hudson provided the rental papers reflecting he had rented the car in Memphis the previous day. He then advised the officer he had been to Dallas for three or four days at the Six Flags amusement park. Brown became suspicious because of the inconsistency between Hudson's statement about how long he had been in Dallas and the date reflected on the rental agreement as to when and where he rented the car, and also because

* William J. Cornelius, Chief Justice, Retired, Sitting by Assignment.

1. See TEX. HEALTH & SAFETY CODE ANN. § 481.121(a)-(b)(3) (Vernon 2003).

2. Hudson's conviction in this case was under cause number 00–F–0392–005 in the trial court. He also has a pending appeal in a companion case for possession of cocaine. That case was under cause number 00–F–0393–005 in the trial court and has been assigned case number 06–02–00212–CR in this Court. The two cases were tried together, and Hudson has raised the same contentions in both appeals, save a few exceptions discussed in the opinion released this date in the companion case.

of the officer's own belief that Six Flags is closed in winter. Brown asked for and received Hudson's verbal and written consent to search the vehicle. Officer Johnny Weaver, acting as backup, watched Hudson and Macklin at the rear of the vehicle while Brown conducted the search. Brown testified that, when he reached in the vehicle to turn off the engine, he smelled the odor of marihuana. Brown then retrieved a drug-sniffing dog to assist with the search. The dog alerted to the trunk of the vehicle. Brown opened the trunk and again smelled the strong odor of marihuana. The dog again alerted to a suitcase inside the trunk. Brown was confident at this point he was about to make a drug arrest, so he ordered Hudson and Macklin to lie on the ground. Brown testified Hudson immediately obeyed the order, but Macklin made a pitching motion from behind his back, throwing a handgun that he had concealed on his person, and then he laid on the ground.[3] Inside the suitcase, 4.86 pounds of marihuana and 1,064.16 grams of cocaine were discovered, along with some clothing. Brown testified he then had Hudson and Macklin stand, read them the *Miranda*[4] warnings, and each acknowledged he understood the rights.

At the police station, and under questioning by Brown, Hudson verbally advised Brown and police officer Mark Henry that he and Macklin had paid $2,500.00 for the marihuana in Dallas, that they were taking it to Memphis, and that a Hispanic male asked them to transport the cocaine from Dallas to Memphis for him. Hudson declined the offer to reduce his statement to writing.

## Sufficiency of the Evidence

Hudson contends the evidence is legally and factually insufficient to support his conviction. He contends that he was not in exclusive possession of the place where the drugs were found and that the State failed to establish an affirmative link between him and the drugs which would allow the jury to find, beyond a reasonable doubt, that he knew of and was in control of the drugs.

In our review of the legal sufficiency of the evidence, we employ the standards set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This calls on the court to view the relevant evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000). In our review, we evaluate all the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App.1999).

In contrast, a factual sufficiency review dictates that the evidence be viewed in a neutral light, favoring neither party. *Johnson*, 23 S.W.3d at 7; *see Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim.App.1996). In determining the factual sufficiency of the evidence to establish the elements of the offense, we view all the evidence in a neutral light and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Johnson*, 23 S.W.3d at 7; *Clewis*, 922 S.W.2d at 129.

---

3. Macklin was charged with possession of marihuana and cocaine as well. His case was scheduled for trial after Hudson's.

4. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ To support a conviction for possession, the state must show that the accused exercised actual care, custody, or control over the substance, that he or she was conscious of his or her connection with it, and that the accused possessed the substance knowingly or intentionally. *Brown v. State,* 911 S.W.2d 744, 747 (Tex.Crim. App.1995); *Roberts v. State,* 963 S.W.2d 894, 898 (Tex.App.-Texarkana 1998, no pet.). The evidence on these elements can be direct or circumstantial. *Brown,* 911 S.W.2d at 747. The state must establish that the accused's connection with the substance was more than just fortuitous. *Id.* When the contraband is not found on the accused's person or it is not in his or her exclusive possession, additional facts must affirmatively link the accused to the contraband. *McMillon v. State,* 940 S.W.2d 767, 768–69 (Tex.App.-Houston [14th Dist.] 1997, pet. ref'd); *Menchaca v. State,* 901 S.W.2d 640, 651 (Tex.App.-El Paso 1995, pet. ref'd); *Green v. State,* 892 S.W.2d 220, 222 (Tex.App.-Texarkana 1995, pet. ref'd). The link, however, need not be so strong that it excludes every other reasonable hypothesis except the defendant's guilt. *Brown,* 911 S.W.2d at 748. The affirmative link ordinarily emerges from an orchestration of several factors and the logical force they have in combination. *Villegas v. State,* 871 S.W.2d 894, 896 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd).

■ Some factors on which various courts have relied to provide this affirmative link include: (1) the place where the contraband was found was enclosed; (2) the contraband was conveniently accessible to the accused; (3) the accused was the owner of the place where the contraband was found; (4) the quantity of the drugs found; (5) the accused possessed a key to the locked location of the drugs; (6) a tip by an informant that the accused was in possession of contraband; (7) the accused was in close proximity to a large quantity of contraband; (8) drug paraphernalia was found on or in plain view of the accused; (9) whether the defendant made incriminating statements when arrested; and (10) whether there was an odor of contraband. *See Washington v. State,* 902 S.W.2d 649, 652 (Tex.App.-Houston [14th Dist.] 1995, pet. ref'd); *Green,* 892 S.W.2d at 222; *Chavez v. State,* 769 S.W.2d 284, 288–89 (Tex.App.-Houston [1st Dist.] 1989, pet. ref'd). The number of the factors is not as important as the logical force the factors have in establishing the elements of the offense. *Gilbert v. State,* 874 S.W.2d 290, 298 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd). Possession need not be exclusive, and evidence showing joint possession with another is sufficient. *Martinez v. State,* 880 S.W.2d 72, 77 (Tex.App.-Texarkana 1994, no pet.).

Hudson contends the State failed to show facts and circumstances which affirmatively link him to the marihuana and the cocaine. He points out that the clothing found inside the suitcase was never matched to a particular individual. There are significant factors, however, linking Hudson to knowledge and control of the contraband. Hudson rented the vehicle in which the marihuana and cocaine were found and, as the driver, was in possession of the keys. The quantities of marihuana and cocaine were large, and were discovered in an enclosed suitcase in the enclosed trunk of the car. *See Cabrales v. State,* 932 S.W.2d 653, 656–57 (Tex.App.-Houston [14th Dist.] 1996, no pet.) (narcotics found in enclosed place inside vehicle driven by defendant). Brown testified he smelled the odor of marihuana in both the passenger compartment of the vehicle and in the trunk. Further, Hudson verbally admitted to the officers he knowingly exercised custody and control of the marihuana and the cocaine. On review of the record, we find

legally and factually sufficient evidence to support Hudson's conviction.

## Defendant's Absence

 The guilt/innocence phase of the trial against Hudson was tried to a jury October 1, 2002. The jury returned a guilty verdict, and the trial proceeded to the punishment phase October 2. Hudson and another witness, Reginald Bowles, testified on Hudson's behalf at the punishment phase. After the testimony at this phase concluded, the court recessed for a short time to provide the attorneys an opportunity to make any objections to the jury charge on punishment. It was apparently during this recess the trial court was advised Hudson had left the courthouse. The trial court stated in open court that the bailiff had made a diligent effort to locate Hudson, but to no avail. The court concluded Hudson had voluntarily absented himself, stating:

> I am advised where [Hudson's] car was parked earlier today, it's no longer there, . . . .
>
> . . . .
>
> Mr. Hudson has been here at all times during the trial until now, and we have now spent an hour approximately, looking for him. It appears that he's not here, and has voluntarily left on his own behalf.
>
> . . . .
>
> His car is gone. He's gone. His friend that came to testify apparently is gone, and [defense counsel does not] know where they are.

The trial court ordered the issuance of a capias for Hudson's arrest. Defense counsel moved to withdraw and also moved for a continuance. Both were denied, and the trial continued with the jury charge and closing arguments. The record reflects that, shortly after defense counsel began closing arguments, the trial court was informed Hudson had been apprehended by the sheriff's department in Hempstead County near Hope, Arkansas. The court informed both attorneys, but neither gave any response to the court or made any reference before the jury to Hudson's apprehension. The cause was submitted to the jury, which then returned a verdict assessing punishment at two years' confinement and a $5,000.00 fine. The sentence, in accordance with the jury's verdict, was pronounced by the trial court, with Hudson in attendance, October 28, 2002.

 Hudson contends the trial court erred by continuing the punishment phase of trial in his absence. Article 33.03 of the Texas Code of Criminal Procedure provides in relevant part:

> In all prosecutions for felonies, the defendant must be personally present at the trial, and he must likewise be present in all cases of misdemeanor when the punishment or any part thereof is imprisonment in jail; provided, however, that in all cases, when the defendant voluntarily absents himself after pleading to the indictment or information, or after the jury has been selected when trial is before a jury, the trial may proceed to its conclusion. When the record in the appellate court shows that the defendant was present at the commencement, or any portion of the trial, it shall be presumed in the absence of all evidence in the record to the contrary that he was present during the whole trial.

TEX.CODE CRIM. PROC. ANN. art. 33.03 (Vernon 1989). In most instances, the appellate court must determine, from hindsight, the validity of the trial court's determination that the defendant's absence was voluntary. *Moore v. State*, 670 S.W.2d 259, 261 (Tex.Crim.App.1984). The defendant must provide evidence to refute the trial

court's determination, or we will not disturb the trial court's finding. *Id.*

The trial court did not err in finding that Hudson's absence was voluntary. The competent evidence shows Hudson was not absent because of some unexpected medical emergency, but because he chose to flee. Hudson was advised that the recess (during which he chose to flee) was to be brief, and neither the court nor his attorney received any communication from him or others to explain his absence. *See id.* Hudson's car was gone, and shortly thereafter, it was learned he was apprehended by the sheriff's department in Hempstead County, Arkansas. No information was offered by Hudson to show his absence was involuntary. The trial court, therefore, did not err in determining Hudson's absence was voluntary and proceeding with the conclusion of the trial.

**Jury Notes**

██ During the punishment phase, the trial court responded to two jury notes:

QUESTION: What happens if we cannot come to agreement on the amount of time or fine?

COURT'S RESPONSE: If after prolonged deliberations the court finds that you cannot agree then a mistrial would be granted.

QUESTION: Are senteces [sic] concurrent?

COURT'S RESPONSE: Yes.

Hudson contends the trial court erred in these communications with the jury in violation of Article 36.27 of the Texas Code of Criminal Procedure, which provides as follows:

Any communication relative to the cause must be written, prepared by the foreman and shall be submitted to the court through the bailiff. The court shall answer any such communication in writing, and before giving such answer to the jury shall use reasonable diligence to secure the presence of the defendant and his counsel, and shall first submit the question and also submit his answer to the same to the defendant or his counsel or [sic] objections and exceptions, in the same manner as any other written instructions are submitted to such counsel, before the court gives such answer to the jury, but if he is unable to secure the presence of the defendant and his counsel, then he shall proceed to answer the same as he deems proper. The written instruction or answer to the communication shall be read in open court unless expressly waived by the defendant.

All such proceedings in felony cases shall be a part of the record and recorded by the court reporter.

TEX.CODE CRIM. PROC. ANN. art. 36.27 (Vernon 1981).

Hudson argues the court gave written answers to the jury's questions: 1) without making such proceedings part of the record and recorded by the court reporter; 2) without the record showing that Hudson was present or that reasonable diligence was used to secure his presence; and 3) without his waiving the requirements of Article 36.27.

The State contends defense counsel was present when each question was read by the court and, after discussion and agreement by both counsel, the court submitted written answers to the jury. Hudson points out there is nothing transcribed by the court reporter in the record about these jury communications and the court's responses. Likewise, there is nothing in the record regarding an express waiver by Hudson of the requirement that the trial court's answers to the jury's communications be read in open court. There is also no indication Hudson or his counsel was

afforded the opportunity to object to the court's answers.

■■■■ The giving of additional instructions to a jury by the trial court without compliance with the statute requiring such communication to be in open court and in the presence of the defendant constitutes reversible error. *Smith v. State*, 513 S.W.2d 823, 829 (Tex.Crim.App. 1974). It is incumbent on a defendant, however, to bring the easily correctable error to the court's attention by objection or formal bill of exception. Otherwise, the acts of the trial court are presumed consistent with the statute. *Green v. State*, 912 S.W.2d 189, 192 (Tex.Crim.App.1995); *Smith*, 513 S.W.2d at 829; *Talley v. State*, 909 S.W.2d 233, 235 (Tex.App.-Texarkana 1995, pet. ref'd); *Williamson v. State*, 771 S.W.2d 601, 604–05 (Tex.App.-Dallas 1989, pet. ref'd); *Adwon v. State*, 708 S.W.2d 564, 569 (Tex.App.-Houston [1st Dist.] 1986, no pet.). We are not to decide cases based on speculation about matters not shown in the record. *Green*, 912 S.W.2d at 192. In the absence of a showing in the record to the contrary, we presume the trial court's response was in compliance with the statute. *Id.* There is no showing here by either objection or bill of exception as to the presence of Hudson's counsel, whether Hudson had returned to the court, or whether Hudson waived the mandates of the statute. Therefore, no reversible error is shown.

**Jury Argument**

■■■■ Hudson contends the State made manifestly improper jury arguments. He points to the following remarks made during the State's closing argument at the guilt/innocence phase of trial:

> And I want you, Ladies and Gentlemen, to take this matter very seriously, because what we're trying to do, is we have a war on drugs going on, and it's

been going on for years, we're going to do our part to continue the battle. We're not going to turn away, and look away, and give this man a reason to say, oh, hey, it's okay. I can—you know—I can do it. I can run it right through Bowie County, it's no big deal. It affects people's lives, Ladies and Gentlemen. We all know that. It affects all of us. Whether it be our tax dollars, whether it be our children—

[Defense Counsel]:—objection, Your Honor, out of the record—

[Trial Court]: Overruled.

[Prosecutor]: Whether it be our tax dollars, whether it be our children, whether it be each of us, what we are trying to do as far as protecting our families, because the bottom line is, Ladies and Gentlemen, drugs lead to other crimes.

■■■■ In general, proper jury argument includes four areas: (1) summation of the evidence presented at trial; (2) reasonable deduction drawn from that evidence; (3) answer to the opposing counsel's argument; or (4) a plea for law enforcement. *Jackson v. State*, 17 S.W.3d 664, 673 (Tex.Crim.App.2000). To constitute reversible error, the argument must be manifestly improper or inject new, harmful facts into the case. *Id.* Hudson contends the argument does not fall within any of the above categories, and improperly implied that "the jury had any control over our tax dollars, our children, and our families."

■■■■ The State contends the argument was a permissible plea for law enforcement. A proper plea for law enforcement includes encouraging the jury to do something about crime and arguing that society is currently waging a war against it. *Smith v. State*, 846 S.W.2d 515, 518 (Tex.App.-Houston [14th Dist.] 1993, pet.

ref'd). In making such a plea for law enforcement, it is permissible for the prosecutor to comment about the war on crime and the respective parts played in that war by the police, prosecutors, court, and jury. *Martinez v. State*, 826 S.W.2d 807, 808 (Tex.App.-Texarkana 1992, no pet.) (citing *Decker v. State*, 717 S.W.2d 903 (Tex.Crim. App.1983); *Holloway v. State*, 525 S.W.2d 165, 170 (Tex.Crim.App.1975); *Chatman v. State*, 509 S.W.2d 868 (Tex.Crim.App. 1974); *Sparks v. State*, 161 Tex.Crim. 100, 275 S.W.2d 494 (1955); *see also Johnson v. State*, 773 S.W.2d 721 (Tex.App.-Houston 1989, pet. ref'd)). In addition, the state may argue the impact of the jury's verdict on the community. *Alexander v. State*, 919 S.W.2d 756, 764 (Tex.App.-Texarkana 1996, no pet.) (citing *Borjan v. State*, 787 S.W.2d 53, 56 (Tex.Crim.App.1990); *Adams v. State*, 685 S.W.2d 661, 671 (Tex. Crim.App.1985); *Stone v. State*, 574 S.W.2d 85, 90 (Tex.Crim.App. [Panel Op.] 1978)). Here, it is clear from the total context of the prosecutor's remarks that he was asking the jury to take the war on drugs seriously because of the effect drugs have on the community and to do their part as jurists in that war. This is a proper plea for law enforcement.

The use of the words "our tax dollars" in this argument, however, was outside the record and improper. *See State v. Majors*, 182 Kan. 644, 323 P.2d 917, 920 (1958); *State v. Perry*, 274 Minn. 1, 142 N.W.2d 573, 579–80 (1966); *State v. Pierce*, 231 Neb. 966, 439 N.W.2d 435, 445–46 (1989); *State v. Muskus*, 158 Ohio St. 276, 109 N.E.2d 15, 18 (1952). Nonetheless, Hudson made no request for an instruction to disregard the prosecutor's remarks. Such an instruction is usually sufficient to cure error. *Johnson v. State*, 583 S.W.2d 399, 408 (Tex.Crim.App. [Panel Op.] 1979). Based on the total context of the prosecutor's argument, the inclusion of the words "our tax dollars" in that argument was not so prejudicial that an instruction to disregard would not have cured the alleged harm.

## Ineffective Assistance of Counsel

■ Hudson first contends he received ineffective assistance of counsel because, at the time of his trial, defense counsel was suspended from the practice of law. Hudson contends his counsel, Clyde Lee, was suspended from the practice of law in the State of Texas July 23, 2002 until February 21, 2003, because of his failure to complete the mandatory continuing legal education (MCLE) requirements. Hudson's trial was held October 1–2, 2002. No motion for new trial was filed, and the only evidence of Lee's suspension from the practice of law is appellate counsel's assertions. Even if Lee's suspension for MCLE violations is accurate and before us, we find it does not amount to ineffective assistance of counsel.

Hudson points out that any practice of law during a suspension constitutes professional misconduct and subjects the member to discipline. *See* TEX. STATE BAR R. art. III, § 2, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G. app. (Vernon 1998). The suspension of trial counsel's law license before trial does not, however, result in a per se denial of Hudson's Sixth Amendment right to effective assistance of counsel. *Cantu v. State*, 930 S.W.2d 594, 602 (Tex.Crim.App.1996). Instead, an inquiry into the facts of the case and the reason for the suspension are required.

A suspended or disbarred attorney is incompetent as a matter of law if the reasons for the discipline imposed reflect so poorly upon the attorney's competence that it may reasonably be inferred that the attorney was incompetent to represent the defendant in the proceeding in question. It is possible that the reasons for discipline could

be so egregious that the attorney would not be competent to represent *any* criminal defendant. Or, the reasons for discipline might in some way be relevant to the attorney's responsibilities in the proceedings in question so as to give rise to an inference that the attorney was incompetent to participate in those particular proceedings.

*Id.*

The Texas Court of Criminal Appeals noted several relevant nonexclusive factors for determining whether an attorney is incompetent as a matter of law: (1) severity of the sanction (suspension versus disbarment; length of suspension); (2) the reasons for the discipline; (3) whether the discipline was based on an isolated incident or a pattern of conduct; (4) similarities between the type of proceeding resulting in discipline and the type of proceeding in question; (5) similarities between kinds of conduct resulting in the attorney's discipline and any duties or responsibilities the attorney had in connection with the proceeding in question; (6) temporal proximity between the conduct for which the attorney was disciplined and the proceeding in question; and (7) the nature and extent of the attorney's professional experience and accomplishments. *Id.* at 602–03.

The inquiry into whether an attorney is incompetent due to the circumstances surrounding loss of licensure is a matter of law reviewed de novo. *Id.* at 603. This inquiry is totally separate from the traditional *Strickland* analysis. *Id.* at 603 n. 8. If an attorney is found incompetent as a matter of law, there is no need to inquire into attorney errors or prejudice. *Id.*

In *Cantu,* defense counsel was suspended for failing to respond to demands for information from the State Bar Grievance Committee. The court found that the failure to respond, even a pattern of failing to

respond, did not render him incompetent as a matter of law or indicate an inability to capably represent criminal defendants. *Id.* at 603. Likewise, the failure to stay current on the MCLE requirements did not render Lee incompetent as a matter of law. The failure to complete the required MCLE requirements is not an indispensable condition of attorney competence. The State Bar Rules promulgate the "purpose of minimum continuing legal education requirements is to ensure that every active member of the State Bar of Texas pursues a plan of continuing legal education throughout his or her career in order to remain current on the law in our rapidly changing society." TEX. STATE BAR R. art. XII, § 1, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G. app. (Vernon 1998). The failure to satisfy the MCLE requirements may relate to a lawyer's knowledge of current law and recent changes and, thus, relate to his or her competence as a lawyer. Such failure, however, does not automatically mean such lawyer is not knowledgeable of current law and recent changes. It is possible for a lawyer, by his or her own initiative, to be knowledgeable of current law, but still fail to satisfy the formal requirements of the MCLE. We, therefore, cannot say Lee's failure to stay current on those requirements necessarily reflects so poorly on his competence that he was ineffective in his representation of Hudson. *See Mazratian v. State,* 961 S.W.2d 353, 357 (Tex.App.-Houston [1st Dist.] 1997, no pet.); *Henson v. State,* 915 S.W.2d 186, 195 (Tex.App.-Corpus Christi 1996, no pet.).

Texas courts have uniformly held that a defendant is not denied effective assistance of counsel merely because her or his attorney was under suspension for a mere technical defect or violation. *See Hill v. State,* 393 S.W.2d 901, 904 (Tex.Crim.App.1965) (attorney's nonpayment of bar dues insuffi-

cient to find violation of right to counsel). The court in *Henson*, 915 S.W.2d at 195, likened the failure to pay bar dues to the failure to complete the MCLE requirements. The court found that an attorney does "not suddenly become incompetent merely because he failed to comply with the State Bar's Minimum Continuing Legal Education requirements." *Id.* While the MCLE requirements promote attorney competence, the failure to complete them does not render an attorney incompetent as a matter of law or indicate an inability to represent criminal defendants capably. It should not be said that an attorney is competent one day, and incompetent the next, because of the failure to satisfy the MCLE requirements. Hudson, therefore, was not denied effective assistance of counsel as a matter of law because of his counsel's alleged suspension.

Hudson alleges other grounds to support his contention he received ineffective assistance of counsel. These include his lawyer's failure to: (1) file a motion for new trial; (2) request a hearing on any pretrial motions; and (3) object to the trial court's written communication with the jury in violation of Article 36.27.

The traditional standard of testing claims of ineffective assistance of counsel is set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted for Texas constitutional claims in *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex.Crim.App.1986). To prevail on this claim, an appellant must prove by a preponderance of the evidence (1) that his or her counsel's representation fell below an objective standard of reasonableness, and (2) that the deficient per-

formance prejudiced her or his defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; *Rosales v. State*, 4 S.W.3d 228, 231 (Tex. Crim.App.1999). To meet this burden, the appellant must prove that the attorney's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for the attorney's deficiency, the result of the trial would have been different. *Tong v. State*, 25 S.W.3d 707, 712 (Tex.Crim. App.2000). Under this standard, a claimant must prove that counsel's representation so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland*, 466 U.S. at 686, 104 S.Ct. 2052.

■■■■ Our review of counsel's representation is highly deferential; we indulge a strong presumption that counsel's conduct falls within a wide range of reasonable representation. *Id.* at 689, 104 S.Ct. 2052; *Tong*, 25 S.W.3d at 712. This Court will not second-guess through hindsight the strategy of counsel at trial, nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness. *Blott v. State*, 588 S.W.2d 588, 592 (Tex.Crim.App.1979). That another attorney, including appellant's counsel on appeal, might have pursued a different course of action does not necessarily indicate ineffective assistance. *Harner v. State*, 997 S.W.2d 695, 704 (Tex. App.-Texarkana 1999, no pet.). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App.1999).[5]

5. Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the presumption that counsel's conduct was reasonable and professional. *Bone v. State*, 77 S.W.3d 828, 833 (Tex.Crim.App.2002). Because the record is rarely adequate to explain counsel's trial strategy, claims of ineffective assistance

 As far as strategic or tactical reasons for counsel's action or inaction, in the absence of direct evidence of counsel's reasons for the challenged conduct, an appellate court will assume a strategic motivation if any can be imagined. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex.Crim.App. 2001). We will not conclude the challenged conduct constitutes deficient performance unless the conduct was so outrageous no competent attorney would have engaged in it. *Id.; see also Thompson*, 9 S.W.3d at 814.

### 1. Failure to file a motion for new trial

 Hudson contends he was denied effective assistance of counsel by his counsel's failure to file a motion for new trial. He contends the failure to file a motion for new trial has, perhaps, prevented this Court from determining whether his absence from the punishment phase of trial was voluntary.

 When a motion for new trial is not filed in a case, there is a rebuttable presumption the defendant was counseled by his or her attorney regarding the merits of the motion and ultimately rejected the option. *Oldham v. State*, 977 S.W.2d 354, 362–63 (Tex.Crim.App.1998). This presumption will not be rebutted when there is nothing in the record to suggest otherwise. *Smith v. State*, 17 S.W.3d 660, 662–63 (Tex.Crim.App.2000) (presumption not rebutted where defendant filed notice of appeal pro se in which he alleged counsel was ineffective and defendant subsequently appeared without counsel to sign pauper's oath and request new counsel); *Oldham*, 977 S.W.2d at 363 (presumption not rebutted where defendant filed a notice of appeal pro se and an affidavit of indigency on twenty-eighth day after sentencing and,

on twenty-ninth day, a notation was made in a court document stating attorney of record on appeal was "to be determined").

In accordance with the above-cited cases, there is nothing in the record to rebut the presumption that Hudson was adequately counseled regarding the merits of a motion for new trial and ultimately rejected the option. Hudson filed a notice of appeal pro se, which is evidence he was informed of at least some of his appellate rights. *Smith*, 17 S.W.3d at 662–63. There is no evidence in the record that Hudson was interested in the option of filing a motion for new trial and that counsel did not adequately assist him in doing so. *See Prudhomme v. State*, 28 S.W.3d 114, 119 (Tex.App.-Texarkana 2000, no pet.) (motion to withdraw plea filed pro se was affirmative evidence appellant sought option of filing motion for new trial). Therefore, nothing in the record exists to rebut the presumption that Hudson was adequately informed of his right to file a motion for new trial and that he ultimately rejected the option.

### 2. Failure to request a hearing on pretrial motions

 Hudson contends defense counsel's failure to request a hearing on pretrial motions deprived him of effective assistance of counsel. The failure to file pretrial motions is not categorically deemed ineffective assistance of counsel because trial counsel may decide not to file pretrial motions as part of his or her trial strategy. *See Hammond v. State*, 942 S.W.2d 703, 710 (Tex.App.-Houston [14th Dist.] 1997, no pet.); *Wills v. State*, 867 S.W.2d 852, 857 (Tex.App.-Houston [14th Dist.] 1993, pet. ref'd). In this case, Hud-

are often better developed through an application for writ of habeas corpus. *Id.* at 833

n. 13.

son's initial trial counsel filed numerous pretrial motions,[6] but Lee, as subsequent trial counsel, elected not to pursue a hearing on any of the motions. The decision not to pursue the motions could have been part of trial counsel's trial strategy because rulings on the motions may not have assisted with the defense, or the State may have had an open file policy regarding the evidence in the case. In any event, the record does not affirmatively demonstrate that the failure to obtain the rulings was due to counsel's ineffectiveness. *See Thompson,* 9 S.W.3d at 813.

### 3. Failure to object to jury communication

■■■■ Hudson contends he received ineffective assistance from counsel's failure to object to the trial court's written communication with the jury in violation of Article 36.27. While the failure to preserve error is an instance of deficient performance, Hudson's defense was not prejudiced by this deficiency.

■■ As previously discussed, the giving of additional instructions to a jury by the trial court without compliance with the statute requiring such communication to be in open court and in the presence of the defendant constitutes reversible error. *Smith,* 513 S.W.2d at 829. The failure to object or offer a bill of exception, however, waives error on appeal. *Id.* The failure to preserve error in regard to Article 36.27 has been viewed as an instance of deficient performance by trial counsel. *See Williamson v. State,* 771 S.W.2d 601, 608 (Tex. App.-Dallas 1989, pet. ref'd).

■■ Likewise, these communications were additional instructions on the law. Where communications are not carried out in strict accord with Article 36.27, courts will find no reversible error when such communications do not amount to additional instructions on the law or some phase of the case, such as communication regarding "administrative matters." *Jones v. State,* 963 S.W.2d 826, 829 (Tex.App.-Texarkana 1998, pet. ref'd) (jury told it could deliberate short time longer before it would be required to recess for day found to be administrative matter); *Collins v. State,* 762 S.W.2d 670, 673 (Tex.App.-Tyler 1988, no pet.); *see also McFarland v. State,* 928 S.W.2d 482, 517 (Tex.Crim.App.1996) (response of "No" to request for definition of "society" not additional instruction); *Martin v. State,* 654 S.W.2d 855, 857 (Tex. App.-Dallas 1983, no pet.) (court instructed jury to continue deliberation after receiving note jury unable to reach decision).

In this case, the jury was given instructions on the law of the case. It was instructed that a "mistrial would be granted" if it could not reach a unanimous decision and that the sentences would run concurrently. Both were responses from the court which instructed the jury on the law of the case, and neither could be termed an administrative matter. *See* Tex.Code Crim. Proc. Ann. art. 36.31 (Vernon 1981), art. 42.08 (Vernon Supp.2004).

The instructions the trial court gave, however, were correct responses under the law, and as such, Hudson has failed to show harm or prejudice to his defense under the second prong of *Strickland.* In

---

**6.** Those motions include a "REQUEST FOR NOTICE OF INTENT TO OFFER EXTRANEOUS CONDUCT UNDER RULE 404(B) AND EVIDENCE OF CONVICTION UNDER RULE 609(F) AND EVIDENCE OF AN EXTRANEOUS CRIME OR BAD ACT UNDER ARTICLE 37.07," "MOTION FOR DISCOVERY OF STATE'S WITNESS LIST," "MOTION TO REQUIRE THE STATE TO REVEAL AGREEMENTS ENTERED INTO BETWEEN THE STATE AND ITS WITNESSES," and a "MOTION FOR DISCOVERY OF EXCULPATORY AND MITIGATING EVIDENCE."

*Williamson,* the defendant was charged with burglary of a building. The defendant, while carrying a microwave down the street, was apprehended by police. *Williamson,* 771 S.W.2d at 604. The owner of the building which was allegedly burglarized verified that a microwave oven, along with other property, had been removed from the building. *Id.* During deliberations, the jury sent out a note to the trial court which read, "Was the microwave positively identified as the one taken from the photo lab?" *Id.* The trial court replied to this note as follows: "In reply to your above note you are instructed that the witness Charles Drobena testified that he compared the serial number from his records to the microwave taken by the police and that it was the one removed from his business." *Id.* The mandates of Article 36.27 were not followed, and defense counsel waived error by not objecting or making a bill of exception. *Id.* at 605. The court found that the failure to preserve error for review was an instance of deficient performance by trial counsel. *Id.* at 608–09. The court also found harm from the fact that the trial court's response to the jury's question was unequivocal, whereas the only testimony on the subject was not as clear and direct as the trial court's answer suggested. *Id.*

It was the State's burden (and not the trial court's) to make that connection if there was one. *See Wright v. State,* 603 S.W.2d 838, 840 (Tex.Crim.App.1980) (op. on reh'g). It was the jury's province (and not the trial court's) to choose to make the connection or inference. *See* Tex.Code Crim. Proc. Ann. art. 36.13 (Vernon 1981), art. 38.04 (Vernon 1979); *Penagraph v. State,* 623 S.W.2d 341, 343 (Tex.Crim.App.1981). Moreover, the jury's question concerning the issue is further evidence of the equivocal nature of the testimony. Surely, this is the type of situation that articles 36.27 and 36.28 are designed to prevent. "Judges

should studiously avoid any remark calculated to convey to the jury their opinion of the case." *Brown v. State,* 475 S.W.2d 938, 947 (Tex.Crim.App.1971), *overruled on other grounds, Bradford v. State,* 608 S.W.2d 918 (Tex.Crim.App. 1980); *see* Tex.Code Crim. Proc. Ann. art. 38.05 (Vernon 1979).

*Id.* at 609.

In this case, unlike *Williamson,* the trial court properly instructed the jury on the law. *See* Tex.Code Crim. Proc. Ann. arts. 36.31, 42.08. No harm has been shown by Hudson from his trial counsel's failure to object to the mandates of Article 36.27. The result of the trial would not have been different had Hudson's attorney properly objected. The trial court properly instructed the jury, and the defendant's presence or the reading of the instruction in open court would not have changed the trial court's instructions to the jury or reasonably affected the outcome of the trial.

**Conclusion**

We affirm the judgment.