In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00085-CR
______________________________


IVORY BENARD BLAKE, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 6th Judicial District Court
Lamar County, Texas
Trial Court No. 19354


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION

          A jury found Ivory Benard Blake guilty of possessing, with intent to deliver, an
amount of cocaine that was greater than four grams but less than 200 grams. See Tex.
Health & Safety Code Ann. § 481.112(a) (Vernon 2003). The jury further found Blake
had possessed the cocaine within a drug-free zone. See Tex. Health & Safety Code Ann.
§ 481.134 (Vernon Supp. 2004). The trial court assessed Blake's punishment at seventy
years' imprisonment and a $5,000.00 fine, in accordance with the jury's verdict. On appeal
to this Court, Blake raises six points of error that challenge the legal and factual sufficiency
of the evidence to support his conviction. In his seventh point of error, Blake contends the
evidence is insufficient to support the jury's finding that he possessed cocaine in a "drug-free zone." We overrule all seven points of error and affirm the trial court's judgment.
I. Background
          The evidence adduced at trial showed the following: On the late evening of
September 3, 2002, Paris, Texas, police officers enlisted the help of confidential informant
Tima Williams (who died before trial) to make a "controlled buy" of narcotics from the
residence of Erik Dunkins and his girlfriend, Vicky Penny, located at 1440 Fitzhugh in
Paris, Texas. Officers had previously recorded the serial numbers of three $20.00 bills
and, using that money, Williams purchased a rock-like substance from the residence,
which was then given to police. Subsequent police field tests of the substance indicated
it was cocaine. The officers then secured a warrant to search the residence at 1440
Fitzhugh based on the results of the "controlled buy." 
          Using a no-knock entry, drug task force officers executed the search warrant at 1:17
on the morning of September 4, 2002. Officers entered through the front door into the
living room of the small house and found Mary Kawanes sitting on the floor. To their right,
officers saw a kitchen in which they located three men later identified as Blake, Dunkins,
and Demetrius Douglas. (According to the officers' testimony at trial, Blake and Douglas
were found next to a back door in the kitchen trying to unlock the door in an attempt to
escape.) A second woman, subsequently identified as Penny, was found in one of the two
bedrooms located off a hallway leading away from the living room. Officers detained all
five suspects while searching the residence for suspected narcotics. 
          The officers' search of the kitchen showed the floor, countertops, and sink to be
covered with a white powder, which a chemist with the Department of Public Safety's
(DPS) laboratory in Tyler identified as cocaine. Also found were a set of scales, a large
amount of cocaine residue inside the kitchen microwave, and a spoon, which officers
testified were all commonly used in the manufacture of crack cocaine. A search of Blake
himself revealed he had no cocaine (except for trace amounts of cocaine powder on the
bottoms of his shoes), but Blake did have a crack pipe and $169.00 in United States
currency in his pocket, including one of the $20.00 bills that came from the informant's
earlier narcotics purchase. (The other two $20.00 bills from the controlled buy were found
in Dunkins' possession).    Throughout the house, officers found several white, off-white,
or pink-colored rocks, which the DPS chemist identified at trial as crack cocaine. The
following table shows the State's exhibit number, where the police found the contraband,
and the weight of each substance:
Exhibit #  Location                                                                       Quantity 
   15          crack purchased during controlled buy                        .43 grams
   16          crack found with pink can on kitchen counter              .35 grams
   17          plastic bag w/ cocaine residue found in sink                        trace
   18          bag w/ residue found in Dunkins' bedroom                          trace
   19          crack found on table in Penny's bedroom                  0.04 grams
   20          crack found on kitchen floor                                       1.16 grams
   21          crack found in Dunkins' bedroom                               3.76 grams
   22          crack found in plastic bottle on kitchen floor              1.55 grams
 
          At trial, Penny and Kay Blake (the appellant's mother) both testified Blake did not
live at 1440 Fitzhugh at the time the search was conducted. Penny denied during cross-examination by the State that she had ever implicated Blake in the sale of drugs, but she
did admit testifying to several different and conflicting sworn statements regarding the night
of September 3, 2002, and that she was currently being prosecuted for perjury. 
II. Standard of Review
          In our review of the legal sufficiency of the evidence, we view the relevant evidence
in the light most favorable to the verdict and determine whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. 
Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Turner v. State, 805 S.W.2d 423,
427 (Tex. Crim. App. 1991). "In reviewing the evidence for legal sufficiency, the court must
presume the trier of fact resolved any conflicting inferences in favor of the prosecution and
must defer to that resolution." Duren v. State, 87 S.W.3d 719, 724 (Tex. App.—Texarkana
2002, pet. denied). "The fact-finder may use common sense and apply common
knowledge, observation, and experience gained in the ordinary affairs of life when giving
effect to the inferences that may reasonably be drawn from the evidence and may infer
knowledge or intent from the acts, words, and conduct of the accused." Id.
          In contrast to legal sufficiency, when reviewing a challenge to the factual sufficiency
of the evidence to support the conviction, we are required to determine whether,
considering all the evidence in a neutral light, the jury was rationally justified in finding guilt
beyond a reasonable doubt. Zuniga v. State, No. 539-02, 2004 Tex. Crim. App. LEXIS
668, at *20 (Tex. Crim. App. Apr. 21, 2004). There are two ways in which we may find the
evidence to be factually insufficient. First, if the evidence supporting the verdict,
considered alone, is too weak to support the jury's finding of guilt beyond a reasonable
doubt, then we must find the evidence insufficient. Id. Second, if—when we weigh the
evidence supporting and contravening the conviction—we conclude that the contrary
evidence is strong enough that the state could not have met its burden of proof, we must
find the evidence insufficient. Id. "Stated another way, evidence supporting guilt can
'outweigh' the contrary proof and still be factually insufficient under a beyond-a-reasonable-doubt standard." Id. If the evidence is factually insufficient, then we must reverse the
judgment and remand for a new trial. Id.
III. Analysis
          In points of error one through four, Blake contends the evidence is legally and
factually insufficient to support the jury's finding that he possessed cocaine in an amount
greater than four grams. To prove unlawful possession of a controlled substance, the state
must prove the defendant (1) intentionally or knowingly exercised actual care, custody, or
control over the illegal substance; (2) was conscious of his or her connection with that
illegal substance; and (3) knew the substance was illegal. Brown v. State, 911 S.W.2d
744, 747 (Tex. Crim. App. 1995); Hudson v. State, 128 S.W.3d 367 (Tex.
App.—Texarkana 2004, no pet.). The state may typically prove the quantity of contraband
allegedly possessed through the testimony of an expert chemist. See Oltiveros v. State,
474 S.W.2d 221, 223 (Tex. Crim. App. 1971). The state may use either direct or
circumstantial evidence to satisfy these elements, but the accused's connection to the
contraband must be more than merely fortuitous. Hudson, 128 S.W.3d 367. If the
contraband is not found on the defendant, or if the contraband is not in the defendant's
exclusive possession, additional facts must affirmatively link the contraband with the
defendant. McGoldrick v. State, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985); Green v.
State, 892 S.W.2d 220, 222 (Tex. App.—Texarkana 1995, pet. ref'd). "The link, however,
need not be so strong that it excludes every other reasonable hypothesis except the
defendant's guilt." Hudson, 128 S.W.3d 367. As this Court stated in Stubblefield v. State,
          Circumstances that may link a defendant to the controlled substance
are: (1) the defendant's presence when the search was executed; (2) the
contraband was in plain view; (3) the proximity to and accessibility of the
contraband; (4) the defendant was under the influence of contraband; (5) the
defendant's possession of other contraband when arrested; (6) incriminating
statements by the defendant when arrested; (7) attempted flight by the
defendant; (8) furtive gestures by the defendant; (9) there was an odor of the
contraband; (10) the presence of other contraband or drug paraphernalia not
included in the charge; (11) the defendant's ownership or right of possession
of the place where the controlled substance was found; (12) the drugs were
found in an enclosed place; (13) there was a significant amount of drugs;
and (14) the defendant possessed weapons or large amounts of cash. 
 
79 S.W.3d 171, 174 (Tex. App.—Texarkana 2002, pet. ref'd). The number of links is not
as important as the quality and degree to which those links tend to connect the defendant
to the contraband. Id. Nor must possession be exclusive to the defendant; evidence
showing the defendant jointly possessed the contraband with another is sufficient to satisfy
the State's burden of proof. Hudson, 128 S.W.3d 367.
          In this case, there was no evidence Blake was under the influence of any narcotic
at the time of the arrest, nor was any crack cocaine found on his person. Blake made no
incriminating statements, nor was there any testimony he lived at the house on Fitzhugh. 
Nonetheless, there are eight links that, if found by a jury, connect Blake to the cocaine: 
(1) Blake was present in the house when the search warrant was executed; (2) police
found quantities of cocaine in plain view; (3) officers found Blake located just a few feet
away from the crack cocaine that was lying on the kitchen countertop;


 (4) officers
described Blake's pre-arrest behavior as consistent with someone who was attempting to
flee; (5) Blake was in possession of drug paraphernalia; (6) officers found the cocaine in
an enclosed home, much of it in the same room as Blake; (7) there was a large amount of
drugs found in the home; and (8) Blake had over $150.00 in cash, including a $20.00 bill
that came from the earlier drug sale to the informant.
          Although it is not the number of affirmative links that control, but rather the degree
to which they connect Blake to the cocaine, the links present in this case are more than
sufficient to warrant the jury's conclusion Blake at least jointly possessed cocaine in an
amount greater than four grams. The total weight of all the drugs seized from the house
was more than six grams. On appeal, Blake claims he was never shown the cocaine in
Dunkins' bedroom and therefore should not have the 3.76 grams found therein be counted
against him. But we find nothing in the record to support such an assertion. To the
contrary, when viewing the evidence in the light most favorable to the prosecution, and
thereby assuming the jury did not believe Blake's money was winnings from a dice game
(as one witness had suggested), Blake and Dunkins both had money the police linked to
the earlier drug sale. 
          A jury could reasonably conclude, given the facts available in this case, that Blake
and Dunkins shared in the proceeds from the earlier drug sale to the informant, Williams. 
It is also logical to assume that persons who jointly benefit from the sale of narcotics may
jointly own the drug supply. That logical inference, combined with the amount of cocaine
found throughout the kitchen and the rest of the house, could lead a jury to reasonably
conclude Blake was working with Dunkins and therefore jointly possessed all the cocaine
officers found throughout the house. We therefore cannot say the jury's verdict is not
supported by legally sufficient evidence, nor can we say the jury's verdict is not factually
sufficient. We overrule points of error one through four.
          In his fifth and sixth points of error, Blake contends the evidence is legally and
factually insufficient to prove he intended to distribute the cocaine. In a drug possession
case, the "intent to deliver" element of the offense may be proven through circumstantial
evidence, "such as the quantity of drugs possessed, the manner of packaging, and the
presence of the accused in a drug house." Taylor v. State, 106 S.W.3d 827, 831 (Tex.
App.—Dallas 2003, no pet.). 
          In this case, Officer Lee Foreman testified, "The amount of cocaine or suspected
cocaine found, along with all the paraphernalia found observed in the kitchen area in plain
view, is associated with delivering, manufacturing." There was no evidence contradicting
Foreman's testimony on this issue, and no one testified that Blake possessed the cocaine
for his own personal use. Moreover, a jury could logically conclude Blake was involved in
the earlier drug sale based on his possession of money linked to the informant's controlled
buy. Accordingly, the evidence is factually and legally sufficient to support the jury's finding
that Blake possessed the cocaine with intent to distribute it. Blake's fifth and sixth points
of error are overruled.
          In his final point of error, Blake contends the evidence is insufficient to support the
jury's finding that Blake possessed cocaine within a "drug-free zone." Blake suggests the
evidence is insufficient because the State (1) offered no evidence that a nearby playground
met any of the statutory requirements, (2) failed to offer the name of the playground, and
(3) offered no map as evidence of the location or area to show the house where Blake was
arrested was actually within 1,000 feet of a playground. 
          If it is shown that an accused possessed cocaine in an amount greater than four
grams, but less than 200 grams, and that the accused possessed the cocaine "in, on, or
within 1,000 feet of premises of a school or a public or private youth center," then the
minimum term of confinement or imprisonment "is increased by five years and the
maximum fine for the offense is doubled . . . ." Tex. Health & Safety Code Ann.
§ 481.134(c). This is commonly called the "drug-free zone" enhancement. In this case,
the jury made a special finding that Blake's offense occurred in a drug-free zone. 
          At trial, Foreman testified 1440 Fitzhugh fell within 1,000 feet of T.G. Givens
Elementary School. The defense presented no evidence to controvert Foreman's
testimony. The drug-free zone statute does not require the State to specifically present
evidence from maps, to have testimony from a college professor of geography, or to submit
complex metes and bounds declarations of nearby properties to satisfy its burden of proof
on the drug-free zone element. Instead, the Health and Safety Code expressly authorizes
the State to introduce or rely on "any other evidence or testimony to establish any element
of an offense for which punishment is increased under Section 481.134 . . . ." Tex. Health
& Safety Code Ann. § 481.135(d) (Vernon 2003) (emphasis added). Therefore, the State
satisfied its burden of proof regarding the "drug-free zone" element through Foreman's
testimony. Blake's final point of error is overruled.
          For the reasons stated, we affirm the trial court's judgment.



                                                                           Donald R. Ross
                                                                           Justice


Date Submitted:      May 5, 2004
Date Decided:         May 6, 2004

Do Not Publish