In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00058-CR
______________________________


RICHARD MCCULLER, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 202nd Judicial District Court
Bowie County, Texas
Trial Court No. 02-F-0520-202


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

            Richard McCuller appeals from his plea of guilty for aggravated sexual assault of a child. 
See Tex. Pen. Code Ann. § 22.021 (Vernon Supp. 2004—2005). The sentence was imposed
December 10, 2004. McCuller did not file a motion for new trial. McCuller filed a notice of appeal
February 16, 2005. 
            McCuller had thirty days after the day sentence was imposed to file a notice of appeal. See
Tex. R. App. P. 26.2(a)(1). Therefore, McCuller had until January 10, 2005, to file a notice of
appeal. The notice of appeal is untimely, and we are without jurisdiction to hear this case.
            We dismiss this appeal for want of jurisdiction. 



                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          March 2, 2005
Date Decided:             March 3, 2005

Do Not Publish



;         A Dallas County jury found Kevin Upshaw guilty of theft of property valued at less
than $1,500.00, having twice been convicted of theft. See Tex. Pen. Code Ann.
§ 31.03(e)(4)(D) (Vernon Supp. 2005). Upshaw pled "true" to the State's enhancement
allegations: one felony conviction for forgery and one conviction for aggravated sexual
assault of a child.


 The jury assessed punishment at eighteen years' imprisonment and a
$1,000.00 fine.


 Upshaw appeals, contending the State's evidence is legally and factually
insufficient to prove the essential elements of theft. We conclude to the contrary and affirm
the trial court's judgment.
Factual and Procedural History
          At about 5:20 p.m., on November 13, 2004, Upshaw entered a Foley's department
store in Northpark Mall in Dallas. Foley's loss prevention investigator, Wilbert Joe Simien,
noticed that Upshaw was carrying Wal-Mart bags into and around the store and, because
there was no Wal-Mart store in the mall or the nearby vicinity, considered Upshaw
suspicious. 
          Video surveillance footage and Simien's testimony established that Upshaw first
went to the fragrance and cosmetics department and appeared to hand to the cashier a
couple of gift boxes to put behind the counter for him. Upshaw, who testified in his own
defense, explained that he did this so he could gather all the items he wanted to purchase
and pay for them at one place. According to Upshaw, he had just been paid and had about
$400.00 to spend on Christmas gifts. According to his account of the day, he had
purchased the Wal-Mart bags from a dollar store when his bus broke down and it began
to rain; he wanted to protect his earlier purchases from the rain. 
          After leaving the fragrance department, Upshaw wandered around the store,
eventually making his way to the electronics department located on the second level. He
spoke to a Foley's employee and spent some time studying his surroundings and shelves
which housed several DVD players packaged in relatively small boxes. He picked up one
of the DVD players and wandered around a while longer before he tucked the box under
his left arm. Carrying the DVD player in this manner caused his jacket to be raised
somewhat on his left side. He continued to walk around the store for approximately six
more minutes, pausing to speak to another Foley's employee, but never going back to the
fragrance counter. 
          At approximately 5:33 p.m., Upshaw left the store, only to meet Simien outside who
took the DVD player from Upshaw and escorted Upshaw back into the store to investigate
the matter. The jury heard Upshaw's testimony explaining that he saw an advertisement
for a DVD player at a better price and that he placed the DVD player on the fragrance
counter and left the store and that he did not have the DVD player when he left Foley's. 
The jury heard testimony from Simien that, in fact, Upshaw did have the DVD player when
he left the store. 
          Upshaw was arrested. Shawanna Mason, supervisor of the inmate property vault
at the Dallas County jail, testified that, when Upshaw was booked into jail, he had only
$10.10 on his person. The jury also viewed the video surveillance footage of Upshaw's
visit to Foley's. 
Applicable Law
          Theft of Property
          A person commits an offense if such person unlawfully appropriates property with
intent to deprive the owner of property. See Tex. Pen. Code Ann. § 31.03(a) (Vernon
Supp. 2005). Because Upshaw contends he did not take the DVD player from the store,
we will take his argument as one challenging the sufficiency of the evidence to prove the
appropriation element of the offense. 
          Standards of Review
          In our review of the legal sufficiency of the evidence, we employ the standards set
forth in Jackson v. Virginia, 443 U.S. 307, 319 (1979). We are to view the relevant
evidence in a light most favorable to the verdict and determine whether any rational trier
of fact could have found the essential elements of the crime beyond a reasonable doubt. 
Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). We must evaluate all of the
evidence in the record, both direct and circumstantial, whether admissible or inadmissible. 
Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).
          In a factual sufficiency review, the appellate court views all the evidence in a neutral
light and determines whether the evidence supporting the verdict is too weak to support
the finding of guilt beyond a reasonable doubt, or if evidence contrary to the verdict is
strong enough that the beyond-a-reasonable-doubt standard could not have been met. 
Threadgill v. State, 146 S.W3d 654, 664 (Tex. Crim. App. 2004) (citing Zuniga v. State, 144
S.W.3d 477, 486 (Tex. Crim. App. 2004)).
          Deference to Jury's Findings
          The jury is the exclusive judge of the facts and is the ultimate judge of the credibility
of the witnesses and the weight to be given their testimony. See Tex. Code Crim. Proc.
Ann. art. 36.13 (Vernon 1981), art. 38.04 (Vernon 1979); Hudson v. State, 128 S.W.3d
367, 383 (Tex. App.—Texarkana 2004, no pet.). The jury is entitled to accept or reject all
or any part of the testimony by the witnesses for the State or the accused. Beardsley v.
State, 738 S.W.2d 681, 684 (Tex. Crim. App. 1987). Reconciliation of evidentiary conflicts
lies within the exclusive province of the fact-finder. See Bowden v. State, 628 S.W.2d 782,
784 (Tex. Crim. App. 1982).
Analysis
          The Evidence Is Legally Sufficient to Sustain the Jury's Verdict
          Viewing the evidence in a light most favorable to the verdict, we point to Simien's
testimony and the surveillance footage to conclude that the record provides sufficient
evidence such that a rational trier of fact could find the essential elements of the offense
beyond a reasonable doubt.
          Simien is very clear that Upshaw was carrying the DVD player when Upshaw left the
store. Simien testified that he met Upshaw just as Upshaw left the store at 5:33 p.m. and
that Upshaw was, indeed, carrying the DVD player under his left arm. 
          The video surveillance footage confirms such a conclusion. From the view of
Upshaw from the front, it is clear that, as late as 5:32:43 p.m., he is carrying the DVD
player under his arm. Upshaw makes a turn, and still at 5:32:43 p.m., the camera switches
to a rear view and the DVD player is not readily visible. We note, however, that from the
rear view, Upshaw's jacket is disheveled in the same manner it had been in the front view
as he carried the DVD player under his left arm. Further, the jury could see the time stamp
on the video surveillance footage and notice that there is no discernible gap between the
front and rear views. From the front view at 5:32:43, it is clear that Upshaw has the DVD
player. It is less clear from the rear view, but the jury could have reasonably concluded
that, given that less than one second elapsed between the camera frames, Upshaw was
still carrying the DVD player as he left the store. 
          We conclude that a rational trier of fact could have found all essential elements of
theft beyond a reasonable doubt. 
          The Evidence is Factually Sufficient to Sustain the Jury's Verdict
          Upshaw presented the meager contrary evidence the record contains. He explained
that he placed the DVD player on the fragrance counter and opted to go elsewhere to get
a better buy on a DVD player. His testimony is undermined, of course, by that of Simien
and by the surveillance video. The jury was able to weigh Upshaw's explanation in light
of the other evidence. From the surveillance video, it is highly improbable, if not physically
impossible, that Upshaw could have returned to the fragrance counter, placed the DVD
player on the counter, and then continued out the store in the available time between
frames.
          The contextual clues from the surveillance footage cast serious doubt on Upshaw's
explanation. In one frame, the jury saw Upshaw from the front, carrying the DVD player
and walking slightly ahead of and to the left of a woman in a green sweater. In the next
frame, from the rear, we see someone who appears to be the same woman in the same
position relative to Upshaw. The jury was free to conclude from this footage that Upshaw
did not deviate from the path as he turned left and went out the store. Additionally, we note
that the surveillance footage shows that the fragrance counter to which Upshaw referred
is not near the exit from which Upshaw left the store.
          Mason's testimony also calls into question Upshaw's version of events. Upshaw
explained that he had approximately $400.00 at the beginning of his shopping venture and
that he planned to buy the DVD player and the two fragrance gift sets all at one place. 
However, on booking at the Dallas County jail, Upshaw had only $10.10 in his possession. 
The jury, as the sole judge of credibility and the weight to be given to testimony, was
authorized to disbelieve Upshaw's testimony, especially in light of the testimony and
surveillance video contrary to Upshaw's account.
          We conclude that the evidence supporting the jury's verdict is not too weak to
support the finding of guilt beyond a reasonable doubt and that the evidence contrary to
the verdict is not strong enough that it would prevent the State from meeting its burden of
proof beyond a reasonable doubt. 
Conclusion
          Having concluded the record provides legally and factually sufficient evidence to
sustain the jury's verdict of guilt, we overrule Upshaw's two points of error and affirm the
trial court's judgment.



                                                                Donald R. Ross
                                                                Justice
 
Date Submitted:      May 1, 2006
Date Decided:         July 21, 2006

Do Not Publish