

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00022-CR

TOMMY THOMPSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 3rd District Court
Anderson County, Texas
Trial Court No. 30837

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Conducting a consensual search of Tommy Thompson's wife's automobile in the parking lot of the Texas Department of Criminal Justice (TDCJ) Beto prison facility in Anderson County,[1] officers found a package of marihuana wrapped in black electrical tape, secreted in the wheel well beneath the floor of the trunk. Thompson, Orelia Collins, and Collins' young son had traveled together in the automobile from Houston to the Beto Unit to visit, respectively, Thompson's son and Collins' boyfriend, who were cellmates.[2] Thompson and Collins had entered the prison together. Thompson had successfully cleared security to get into the visiting area and had been physically separated from Collins, when guards found hidden in Collins' "crotch area" and under her clothing two packages of contraband, also wrapped in black electrical tape.[3] The discovery of contraband on Collins' person prompted officers to get the consent to search the Thompson automobile.

As a result of the discovery of marihuana in the vehicle, Thompson stands convicted by a jury of having a prohibited item in a correctional facility[4] and sentenced to nine years'

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]Although there is some uncertainty about the relationship—Thompson is either father or uncle to the person he intended to visit—Thompson was visiting his relative Antonio Shrepee. Collins intended to visit James Mask, her purported boyfriend and Shrepee's cellmate. Thompson visited the unit regularly to see Shrepee, was always courteous, and never caused any problems.

[3]Collins was wearing two sets of clothing, consisting of a long skirt with pants underneath. The contraband found on Collins consisted of twelve small vials of liquid, identified as PCP, and a separate, larger package containing marihuana.

[4]*See* TEX. PENAL CODE ANN. § 38.11 (West 2011).

incarceration. On appeal, Thompson contends that the evidence is insufficient to link him to the marihuana in the vehicle. Because sufficient evidence supports Thompson's conviction, we affirm the judgment of the trial court.

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found beyond a reasonable doubt the essential elements of having a prohibited item in a correctional facility. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

The indictment charged Thompson with possession of a "controlled substance, namely, marijuana, while on property owned or used or controlled by the Texas Department of Criminal Justice Beto Unit, a correctional facility, to wit: parking area at Beto Unit." Our law provides

3

that a person commits an offense if the person "possesses a controlled substance or dangerous drug while in a correctional facility or on property owned, used, or controlled by a correctional facility." TEX. PENAL CODE ANN. § 38.11(d)(1). A person possesses an object if he or she has actual care, custody, control, or management of that object. TEX. PENAL CODE ANN. § 1.07(a)(39) (West Supp. 2013); *Woodard v. State*, 355 S.W.3d 102, 107 (Tex. App.—Houston [1st Dist.] 2011, no pet.). "Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." TEX. PENAL CODE ANN. § 6.01(b) (West 2011).

"To prove unlawful possession of a controlled substance, the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband." *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). The State may accomplish its task of proving "possession," where possession is an element of the charged offense, by demonstrating the defendant's consciousness of his or her connection with the thing allegedly possessed and that the defendant knew what it was. *Hawkins v. State*, 89 S.W.3d 674, 677 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd); *see, e.g.*, *Poindexter*, 153 S.W.3d at 405.

Here, Thompson contends he did not knowingly possess the controlled substance found in the spare tire well of the vehicle under his control, claiming the package in question must have belonged to Collins. Where, as here, the controlled substance is not in the exclusive control of the defendant at the time when and in the place where it is found, the State must make a showing of links between the accused and the controlled substance. *Evans v. State*, 202 S.W.3d 158, 161–

4

62 (Tex. Crim. App. 2006); *Muckleroy v. State*, 206 S.W.3d 746, 748 (Tex. App.—Texarkana 2006, pet. ref'd). The links must establish, "to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous." *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). A defendant's mere presence at the location where drugs are found is insufficient, by itself, to establish care, custody, or control of the drugs. *Evans*, 202 S.W.3d at 162. However, presence or proximity, when combined with other direct or circumstantial evidence, may be sufficient to establish control, management, custody, or care beyond a reasonable doubt if the proof amounts to more than a strong suspicion or probability. *Id.*; *Lassaint v. State*, 79 S.W.3d 736, 741 (Tex. App.—Corpus Christi 2002, no pet.).

Various factors have been recognized as contributing to an evaluation of whether an accused is linked to the contraband. A nonexclusive list of links that may circumstantially establish the sufficiency of the evidence to prove that a defendant had knowing possession of contraband include the following: (1) the defendant's presence when a search is conducted, (2) whether the contraband was in plain view, (3) the defendant's proximity to and the accessibility of the contraband, (4) whether the defendant possessed other contraband when arrested, (5) whether the defendant made incriminating statements when arrested, (6) whether the defendant attempted to flee, (7) whether the defendant made furtive gestures, (8) whether other contraband was present, (9) whether the defendant owned or had the right to possess the place where the contraband was found, (10) whether the place where the contraband was found was enclosed, (11) whether the defendant was found with a large amount of cash, (12) whether his or her conduct indicated a consciousness of guilt, (13) the quantity of the contraband, and

5

(14) whether he or she was observed in a suspicious area under suspicious circumstances. *Evans*, 202 S.W.3d at 162 n.12; *Muckleroy*, 206 S.W.3d at 748 n.4.[5]

Shortly after the discovery of the marihuana in the vehicle, Thompson was interviewed by Larry Mars, an investigator for the Office of Inspector General. In his interview with Mars, Thompson indicated that he drove to the prison in his wife's car to visit Shrepee.[6] Thompson brought Collins and her son along so Collins could visit her boyfriend. Along the way, the trio stopped at a gas station, where Collins bought a hot dog for her son. Thompson stated that he told Collins, "[Y]ou can't take that, you know, on the inside of the prison, but your ID is all you need . . . ." According to Thompson's statement to Mars, Collins then told him (Thompson) that she was going to put her jacket and her purse in the trunk. Collins' purse was later located in the front seat of Thompson's car. A piece of woman's clothing (possibly a jacket) was located in the car's trunk, although it was never identified as belonging to Collins. Collins reportedly had her jacket with her inside the prison.

Thompson volunteered to Mars that he knew officers had discovered contraband on Collins' person, packaged in "a black thing like that." Thompson also claimed that he "did not know she had that on . . . the privates or whatever it was."[7]

---

[5]This has been termed the "affirmative links" rule. *Evans*, 202 S.W.3d at 161. This rule "is not an independent test of legal sufficiency." *Id.* at 161 n.9. Rather, the term is used "merely as a shorthand catch-phrase for a large variety of circumstantial evidence that may establish the knowing 'possession' or 'control, management, or care' of some item such as contraband." *Id.*

[6]Shrepee has known Collins for many years, as the two grew up together in the same apartment complex on Coke Street in Houston.

[7]Mars' interview with Thompson was audio recorded, after which Thompson was afforded the opportunity to provide a written statement. In his written statement, Thompson indicated that he gave Collins a ride to the prison to visit her boyfriend. He stated that he did not know that she "had weed on her."

Mars testified that, because Thompson and Collins were separated before Collins was searched, Thompson must have known that Collins had contraband hidden in a private area before Collins' entrance into the prison. The same was true of the manner in which the contraband was wrapped. Thompson described the contraband found on Collins as "a black thing like that." The contraband found in the trunk of Thompson's vehicle was also wrapped in black electrical tape. Mars' only explanation for Thompson's description of the contraband as "a black thing" was that he must have known how it was packaged before Collins entered the prison. Mars conceded, however, that someone could have told Thompson that Collins concealed the contraband in her clothing.

Here, Thompson was in possession of the car where the contraband was located—ostensibly with his wife's permission—and, as the driver, was in possession of the keys. Thompson was present when the canine search revealed marihuana hidden in the spare tire well under the floor of the car's trunk. *See Hudson v. State*, 128 S.W.3d 367, 374 (Tex. App.—Texarkana 2004, no pet.) (finding trunk of car an enclosed space). Thompson's possession of the car, his presence when the search was conducted, and the location of the marihuana in an enclosed space, helps to establish the requisite affirmative links between Thompson and the marihuana.

While there was no additional contraband found in Thompson's vehicle, Collins was caught while attempting to smuggle contraband into the prison visitation area. The contraband found on Collins was wrapped with black electrical tape, as was the contraband located in Thompson's vehicle. Thompson's apparent prior knowledge of the appearance and location of

the contraband found on Collins' person also links him to the contraband located in his vehicle. Directly after the search of Thompson's vehicle, Thompson was interviewed by Mars. Although Thompson and Collins were separated before Collins removed the hidden contraband from her clothing, Thompson was able to describe where the contraband was hidden ("on . . . the privates") and its basic appearance ("a black thing"). There was no evidence that Thompson was ever told, after the contraband was discovered on Collins but before he spoke with Mars, how the contraband found on Collins was packaged and where it was located.

The logical force of the evidence linking Thompson to the marihuana found in the spare tire well located in the car's trunk makes his connection to the contraband more than fortuitous. Viewing the evidence in the light most favorable to the verdict, we hold that the jury could have rationally found, beyond a reasonable doubt, that Thompson knowingly possessed marihuana on property owned, used, or controlled by the TDCJ. Therefore, we find the evidence legally sufficient to support his conviction.

We affirm the judgment of the trial court.


                                        Josh R. Morriss, III
                                        Chief Justice


Date Submitted:        January 28, 2014
Date Decided:          February 27, 2014

Do Not Publish

8